UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY SEVY,

          Plaintiff,

-vs-

COURT OFFICERS PHILIP BARACH
and ~~HAROLD MARSHALL~~, in their
individual capacities,

          Defendants.

Case No. 2:17-cv-13789
Hon. Laurie J. Michelson
Mag. Judge Anthony P. Patti

| | |
|---|---|
| JONATHAN R. MARKO (P72450) | KALI M. L. HENDERSON (P76479) |
| **MARKO LAW, PLLC** | T. JOSEPH SEWARD (P35095) |
| Attorney for Plaintiff | **SEWARD HENDERSON, PLLC** |
| 1300 Broadway Street, Fifth Floor | Attorneys for Defendants |
| Detroit, MI 48226 | 210 East 3rd Street, Suite 212 |
| P: (313) 777-7529 / F: (313) 771-5785 | Royal Oak, MI 48067 |
| jon@markolaw.com | P: (248) 733-3580 / F: (248) 733-3633 |
| | khenderson@sewardhenderson.com |
| | jseward@sewardhenderson.com |

## <u>PLAINTIFF'S MOTION FOR NEW TRIAL ON DAMAGES</u>

NOW COMES Plaintiff, **ANTHONY SEVY**, by and through his attorneys, **MARKO LAW, PLLC**, and submits the following for his Motion for New Trial on Damages:

1.    This Court is familiar with this excessive force Section 1983 case where Plaintiff, Anthony Sevy, alleged he was subjected to excessive force by Defendant court officer.

2.    The jury found that Defendant used excessive force on Plaintiff and returned a verdict in Plaintiff's favor.

1

3.     Plaintiff presented testimony at trial on damages from himself; his wife Lauren Roumayah; his parents, Robert and Cathy Sevy; medical records from Epic Primary Care; and testimony of expert psychiatrist, Dr. Gerald Shiener.  The Defendant presented a single damage witness, Dr. Catherine Frank, who, as discussed in the brief below, largely agreed that Plaintiff was substantially damaged from the incident but testified that he did not meet a single prong of a PTSD diagnosis.

4.     Despite the uncontradicted and overwhelming evidence of Plaintiff's damages, the jury only awarded $3,000.00 in noneconomic damages and no punitive damages.

5.     This award flies in the face of uncontroverted evidence presented at trial. The only explanation for such a low damage verdict is that the jury was influenced by bias, passion, sympathy, and/or other impermissible factors.

Accordingly, Plaintiff respectfully asks this Court to grant a new trial on the issue of *damages only* with respect to:

   a.  Past non-economic damages;

   b.  Future non-economic damages; and

   c.  Punitive damages.

Respectfully submitted,

/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
1300 Broadway Street, Fifth Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 777-5785
Email: jon@markolaw.com

Date:  August 1, 2022

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY SEVY,

              Plaintiff,

-vs-

COURT OFFICERS PHILIP BARACH
and ~~HAROLD MARSHALL~~, in their
individual capacities,

              Defendants.

Case No. 2:17-cv-13789
Hon. Laurie J. Michelson
Mag. Judge Anthony P. Patti

| | |
|---|---|
| JONATHAN R. MARKO (P72450) | KALI M. L. HENDERSON (P76479) |
| **MARKO LAW, PLLC** | T. JOSEPH SEWARD (P35095) |
| Attorney for Plaintiff | **SEWARD HENDERSON, PLLC** |
| 1300 Broadway Street, Fifth Floor | Attorneys for Defendants |
| Detroit, MI 48226 | 210 East 3rd Street, Suite 212 |
| P: (313) 777-7529 / F: (313) 771-5785 | Royal Oak, MI 48067 |
| jon@markolaw.com | P: (248) 733-3580 / F: (248) 733-3633 |
| | khenderson@sewardhenderson.com |
| | jseward@sewardhenderson.com |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR NEW TRIAL ON DAMAGES

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

JM MARKO LAW

1

# <u>TABLE OF CONTENTS</u>

Index of Authorities ................................................................................................ii

Facts ........................................................................................................................1

    A.    Video and Photographs ............................................................1

    B.    Epic Primary Care Records ....................................................2

    C.    Testimony of Medical Professionals, Dr. Shiener and Dr. Frank .............2

    D.    Plaintiff's Testimony and that of His Family ...........................5

Argument ................................................................................................................6

Conclusion .............................................................................................................11

MARKO.LAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

i

## <u>INDEX OF AUTHORITIES</u>

<u>Cases</u>

*Bedenfield v. Shultz,* 272 F.Supp. 2d 753, 754 (N.D.Ill 2003) ..........................................7

*Bell,* 404 F.3d at 1003 (6th Cir. 2005) ...............................................................................7, 8

*Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986) .................................................10

*Morris v. Eversley*, 343 F.Supp.2d 234 (S.D.N.Y. 2004) ................................................7, 8

*Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) .....................10

*Walker v. Bain*, 257 F.3d 660, 67 [4] (6th Cir.2000) ........................................................8

<u>Federal Rules</u>

Fed.R.Civ.P. 49(b)(2) .........................................................................................................6

Fed.R.Civ.P. 49(b)(3) .........................................................................................................6

Fed.R.Civ.P. 59(a)(l)(A) .....................................................................................................7

MARKO.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

# FACTS

After a 7-day jury trial, the jury unanimously found in favor of Plaintiff on his claim for excessive force. Implicit in this finding is that the Defendant court officer strangled the Plaintiff in the courthouse vestibule.

With regards to damages, the jury found that Plaintiff suffered the following damages:

- $3,000.00 non-economic past damages

- No future non-economic damages

- No punitive damages[1]

The uncontroverted evidence supported a larger damage award for non-economic damages. It is inconceivable that the jury could reach such an award for non-economic damages in light of the evidence presented at trial, which is outlined below.

## A.    Video and Photographs

The jury was presented with a video of the attack on the Plaintiff which showed the Defendant choking the Plaintiff and taking him to the ground in the courthouse vestibule. Plaintiff also presented photographs of Plaintiff's soiled underwear related to the assault and other videos, including a video showing Plaintiff being taken out of the courthouse elevator where Defendant admits Plaintiff was thrown to the ground.

---

[1] See ECF No. 110, Jury Verdict Form

1

### B.    Epic Primary Care Records

Epic Primary Care records were introduces showing that the day after Plaintiff was assaulted, he presented to Dr. Robert Levine in Ferndale, Michigan, where Anthony complained of neck pain and muscle pain. The records indicate that the Plaintiff was physically assaulted by a police officer in Royal Oak and lost consciousness while being assaulted due to paying a parking ticket with coins instead of dollars. Pain on the right side of the neck was present. Dr. Levine was able to observe "mild bruising" and "swelling." A physical exam noted tenderness at the soft tissue in an area of approximately 4 cm by 5 cm in the right neck. The Plaintiff recounted being "choked out" to the point of unconsciousness where he defecated himself. (**Exhibit 1**, Epic Primary Care records).

These medical records are consistent with Officer Marshall's testimony to the jury that the Defendant did indeed choke Plaintiff by grabbing the right side of his neck. Plaintiff also presented photos of his defecated underwear to the jury. Moreover, all of the medical professionals who testified in the case, including the Defendant's own expert, Dr. Catherine Frank, testified that Plaintiff was choked out and that he lost consciousness. The only question in Dr. Frank's mind was the length of unconsciousness. Both medical professionals explained that defecating oneself is a symptom of having the blood flow to the brain interrupted that can occur through a chokehold.

### C.    Testimony of Medical Professionals, Dr. Shiener and Dr. Frank

The only medical testimony regarding damages at trial was through Plaintiff's expert, neuropsychiatrist, Dr. Gerald Shiener, and defense expert, Dr. Catherine Frank. Dr. Shiener testified that Plaintiff had post-traumatic stress disorder and anxiety disorder as it

2

relates to the assault by the Defendant.  He described Plaintiff as experiencing significant symptoms including, but not limited to panic attacks; nightmares; flashbacks; phobic avoidance; fear response including avoiding Royal Oak; and suffering from a clinical diagnosis of secondary depression.  Dr. Shiener testified that Mr. Sevy's problems were continuing from the time of the event until his last examination of Mr. Sevy which occurred on May 10, 2022.  Dr. Shiener's opinion was that these problems were chronic and would continue into the future.  In other words, the conditions are permanent.

Defendant called a single damage witness, Dr. Catherine Frank. Dr. Frank works for Henry Ford Hospital and evaluated the Plaintiff at the request of Defendant. She was paid for and hired by the Defendants. She also reviewed records related to this case. Dr. Frank testified that Plaintiff suffered from the following symptoms that she attributed directly to the incident at the courthouse with the Defendant:

- Plaintiff was "on edge";

- Plaintiff was "alert and vigilant";

- Plaintiff was "paranoid";

- Plaintiff was "jittery," "worried," and "less social";

- Plaintiff was angry and "reminded daily" of the assault at the courthouse;

- Plaintiff experienced physical symptomology as a result of the assault, including weight loss;

3

- Plaintiff experienced flashbacks related to the incident 5-6 times per week;

- Plaintiff was described as being "withdrawn," "sedate," and "less social";

- Plaintiff had insomnia and experienced what Dr. Frank termed as "early morning awakening," which is an abnormal sleeping pattern where an individual wakes up earlier than their body is supposed to and cannot go back to sleep;

- Dr. Frank described Plaintiff as having avoidance features including avoiding triggering of the stimulus related to the assault by the Defendant including, but not limited to avoiding Royal Oak.

Dr. Frank admitted that there was no other explanation for any of these symptoms other than the assault at the courthouse. Dr. Frank was forced to admit on cross-examination that, in her opinion, all of these symptoms were caused by the encounter with the Defendant in the courthouse vestibule where Plaintiff was choked by Defendant.  Dr. Frank admitted that attack caused Plaintiff to lose consciousness.

The only disagreement between Dr. Frank and Dr. Shiener was with regard to the diagnosis of post-traumatic stress disorder under the "DSM V." Dr. Frank was walked through the DSM-V on cross-examination and admitted that Mr. Sevy met the criteria for each and every diagnostic criteria, except for the last one (six out of seven). Nevertheless, Dr. Frank admitted that whatever label was applied to Mr. Sevy's condition, the above symptoms were related to the incident and that Mr. Sevy did indeed suffer harm as a result.

4

**D.      Plaintiff's Testimony and that of His Family**

The other damage witnesses to provide testimony were Mr. Sevy, his wife, and his family. Mr. Sevy's wife testified during a tearful exchange that Anthony is not the same person that he was before the assault. She testified that Anthony's problems began after he was assaulted by the Defendant in this case. She testified that Anthony has become withdrawn and paranoid. Anthony would pull the blinds down at the house and had delusional thoughts of unmarked police cars waiting for him outside. Lauren testified that the incident has greatly affected their marital relationship. She testified that Anthony has changed as a person and that little things affect their everyday relationship. For example, Anthony avoids Royal Oak. When he goes out to a restaurant, he now has to sit facing the door because of his paranoia.  The family has stopped doing things that they normally like to do such as recreational activities.

Plaintiff, Anthony Sevy confirmed that he has issues related to the incident consistent with those testified to by his other family members and testified that they are ongoing and continuing.  Plaintiff testified that he is not the same person, is anxious, and lives with what happened every day.

Cathy Sevy, Anthony's mother, testified that he has changed since the incident and is not the same person. She testified that these symptoms are ongoing and continuous and started at the time of the incident.

Robert Sevy testified consistent with other family members. Robert Sevy testified that Anthony has become withdrawn. Anthony no longer takes enjoyment out of normal family functions such as family dinners.  He recounted examples. Anthony and he went to

5

a baseball game and Anthony was paranoid and looked around the car as if someone was out to get him. Robert also gave an example of when Anthony could no longer take enjoyment out of normal things such as playing basketball.

Not a single person or piece of admissible evidence established that Anthony did not continue to experience harm or loss related to the assault at the Royal Oak courthouse. The evidence was undisputed that Anthony's problems continued. The defense's only witness on this issue, Dr. Catherine Frank testified that at the time she saw Anthony, his problems were ongoing, and she had no to contradict the other witnesses that Anthony's problems were continuing.

## ARGUMENT

Fed.R.Civ.P. 49(b)(2) provides that when the general verdict and the answers are consistent, the court must approve, for entry under Rule 58, an appropriate judgment on the verdict and answers. Fed.R.Civ.P. 49(b)(3) further provides that when the answers are consistent with each other but one or more is inconsistent with the general verdict, the court may:

> (A) approve, for entry under Rule 58, an appropriate judgment according to the answers, notwithstanding the general verdict;
> (B) direct the jury to further consider its answers and verdict; or
> (C) order a new trial.

Further, Fed.R.Civ.P. 49(b)(2) mandates a new trial in circumstances such as this, where:

> . . . the answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment must not be entered; instead, the court must direct the jury to

6

further consider its answers and verdict or must order a new trial.

Fed. Rule Civ. Proc. 59(a)(l)(A) further provides that the court may, on motion, grant a new trial on all or some of the issues --- and to any party --- as follows:

(A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or

\* \* \*

(d) NEW TRIAL ON THE COURT'S INITIATIVE OR FOR REASONS NOT IN THE MOTION. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

A new trial should be awarded based on inadequate damages where "the evidence indicates that the jury awarded damages in an amount substantially less than unquestionably proved by plaintiffs uncontradicted and undisputed evidence." *Bell,* 404 F.3d at 1003 (6th Cir. 2005) (new trial based on inadequate damages upheld in 1983 action). *See also Bedenfield v. Shultz,* 272 F.Supp. 2d 753, 754 (N.D.Ill 2003) (New trial on damages granted where there was no reasonable basis for jury's failure to award compensatory damages in Section 1983 excessive force case).

Courts have appropriately ordered additur or a new trial on damages where the jury's award was "against the great weight of the evidence at-trial," *Bell*, 404 F.3d 997 (6th Cir. 2005) (affirming District Court grant of new trial on damages where jury awarded $1,500 in compensatory damages and no punitive damages to prisoner victim of First Amendment retaliation), or "so grossly inadequate as to shock the conscience." *Morris v. Eversley*, 343

7

F.Supp.2d 234 (S.D.N.Y. 2004) (affirming new trial on damages where jury awarded only $500 in compensatory and $7,500 in punitive damages to woman prisoner who was victim of attempted rape by a corrections officer).

In *Bell*, the plaintiff was a prisoner serving a sentence for armed robbery. 404 F.3d at 999. The plaintiff filed a lawsuit under §1983 against prison guards and administrators due to his placement in administrative segregation and other civil rights violations *Id*. After filing his lawsuit, the plaintiff became the victim of retaliatory acts by the correction's officers. *Id.* at 1000. On several occasions the plaintiff's cell would be searched by corrections officers and his legal papers would be taken from him and not returned. *Id.* The plaintiff's First Amendment retaliation claims went to trial, and a jury awarded only $1,500.00 in compensatory damages and no punitive damages. *Id.* at 1001. The plaintiff filed a timely motion for a new trial on the issue of damages, which was granted. *Id.* The district judge found:

> The damage award of $1500.00 in compensatory damages with no award for punitive damages was against the great weight of the evidence at trial . . . The jury's award of only $1500.00 in compensatory damages as a consequence is seriously flawed . . . The verdict is simply not one which a jury, given the evidence detailed above and applying the instructions on the law set forth above, could reasonably have reached. The evidence shows that [the defendant's] conduct was wanton and oppressive and is such that the "jury awarded damages in an amount substantially less than unquestion[ably] proved by the ... uncontradicted and undisputed evidence." *Walker v. Bain*, 257 F.3d 660, 67 [4] (6th Cir.2000).

*Id.*

Similarly in *Morris*, a new trial on damages was granted after a jury awarded $500. in compensatory damages and $7,500. in punitive damages after a three-day jury trial on

the plaintiff's §1983 claim. 343 F.Supp.2d at 238. The plaintiff had been the victim of an attempted rape by a corrections officer. *Id.* at 237. The district court held that the "jury's damages were so grossly inadequate as to shock the conscience, vacated the jury's verdict in part, and ordered a new trial on the issues of punitive and compensatory damages only." *Id.*

The non-economic damages awarded in these case are greatly against the weight of the evidence presented at trial. There was uncontradicted testimony by two medical experts that Defendant choked Plaintiff to the point that Plaintiff lost consciousness and defecated himself. The medical reports presented in this case indicated that Plaintiff had observable bruising and swelling on his neck as a result of the attack. All of this was caught on video. The jury award of $3,000 for past non-economic damages certainly shocks the conscience in light of all of the evidence presented in this case. Even if Plaintiff suffered no lasting effects, being choked unconscious to the point of defecating in his pants is worth more than $3,000.

Similarly, the jury's award of no future non-economic damages goes entirely against the weight of the evidence presented at trial. Dr. Shiener testified that Plaintiff had post-traumatic stress disorder and anxiety disorder as a result of the assault by Defendant. Dr. Shiener also testified that these issues were chronic and would continue to impact Plaintiff's life in the future. The Defendant's own expert, Dr. Franks, indicated that Plaintiff suffered from a myriad of symptoms, all of which were directly attributed to the assault. Because Dr. Frank did not reevaluate Plaintiff prior to trial, she could not opine on Plaintiff's present state, but she stated that she had no reason to disagree with Dr.

9

Shiener's findings.  In addition to the expert testimony, Plaintiff's family provided many examples of the long-lasting effects of the attack.  Plaintiff is not the same person that he was after the attack.  It has been nearly five and a half years since Defendant savagely and without warning strangled Plaintiff to the point of unconsciousness and he is still suffering. The jury's award goes entirely against the evidence presented at trial in regard to future non-economic damages.

Finally, the complete lack of punitive damages is not supported by the evidence. Punitive damages are appropriate in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). "The allowance of such damages involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent." *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986). Here, the jury found that Defendant used excessive force when Defendant grabbed Plaintiff by the throat and choked Plaintiff to the point of unconsciousness.  The uncontradicted evidence at trial shows that choke holds are deadly force, and that Defendant was not justified in using deadly force.  Furthermore, Defendant testified that he would take people down by the neck all the time, during his time breaking up bar fights as a Royal Oak police officer, and that he thought a lawsuit about using deadly force against someone walking out of a courthouse was frivolous.  The complete lack of concern for the use of deadly force certainly falls under the umbrella of such "reckless or callous

10

indifference to the federally protected rights of others" that punitive damages are warranted.

**CONCLUSION**

WHEREFORE, this Court should find that Plaintiff is entitled to a new trial on damages.

Respectfully submitted,

/s/ *Jonathan R. Marko*
Jonathan R. Marko (P72450)
**MARKO LAW, PLLC**
1300 Broadway Street, Fifth Floor
Detroit, MI 48226
(313) 777-7529 / Fax: (313) 777-5785
Email: jon@markolaw.com

Date:  August 1, 2022

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each attorney of record on **August 1, 2022,** via:

| | |
|---|---|
| ☐ U.S. Mail | ☐ Fax |
| ☐ Hand Delivered | ☐ Overnight Carrier |
| ☐ Certified Mail | ☐ Other:  Mi-FILE Truefiling |
| ☒ ECF System | ☐ Email |

/s/ *Melinda S. Morisset*

11

MARKOLAW.COM

1300 BROADWAY ST. | 5TH FLOOR
DETROIT, MI 48226

P: (313) 777-7LAW
F: (313) 771-5785

MARKO LAW

# EXHIBIT 1



# EPIC PC FERNDALE

911 E 9 MILE RD
FERNDALE , MI 48220
Phone: (248) 336-4000
Fax: (248) 336-9137
Email: INFO@EPICPC.COM

**ANTHONY SEVY**  **Patient #:** 262570  **DOB:** 04/27/1984 (32 years)

**Date of Encounter:** 02/14/2017 12:19 PM

## History of Present Illness
Dr ROBERT C LEVINE, M.D. 02/14/2017 12:43 PM

Patient words: Disease Management.

The patient is a 32 year old male who presents with a complaint of muskuloskeletal symptom. The muskuloskeletal symptom are characterized as neck pain (patient states he was choked.) and muscle pain. The onset of the muskuloskeletal symptom has been sudden and has been occurring in a persistent pattern for 1 day. The course has been gradually worsening. The muskuloskeletal symptom is described as a moderate pain, stiffness and tenderness. The pain is located in the neck. Aggravating factors include movement (motion). The muskuloskeletal symptom has no relieving factors. has been increasing. Note for "Muskuloskeletal symptom": Patient states was physically assaulted by an police officer in royal oak yesturday and lost conciousness while being assaulted by the officer due to paying a parking ticket with coins intead of dollars. Pt has pain R side of his neck just posterior to the SCM with mild bruising and swelling noted. POint tenderness noted at soft tissue in an area approx 4cm x 5cm Right neck. Pt states he was "choked out" to the point of unconsciousness and was incontinent of stool at the time of loosing consciousness. Pts descripton of the events and his experience with the LOC is consistent with what would be expected to take place with the strangulation process and full or partial collapse of his windpipe. The incontinence of stool and/or urine is a common finding with such instances. The even and constant pressure on his neck is likely factual based on pts experience.

## History
Joann CA 3.31 Bradley 02/14/2017 12:20 PM

### Allergy
No Known Drug Allergies (04/28/2015)
### Social
Tobacco Use: Never smoker
Alcohol Use: Occasional alcohol use
### Medications
Medications Reconciled.
### Family
FAMILY HISTORY OF HEART ATTACK (Z82.49) : Father
### Health Maintenance
EXAMINATION, ROUTINE MEDICAL  (05/07/2015)

## Review of Systems
Joann CA 3.31 Bradley 02/14/2017 12:21 PM

**General** Not Present- Fever.
**Skin** Not Present- Rash.
**HEENT** Not Present- Rhinitis.
**Neck** Not Present- Swollen Glands.
**Respiratory** Not Present- Wheezing.
**Cardiovascular** Not Present- Shortness of Breath.
**Gastrointestinal** Not Present- Constipation, Diarrhea and Vomiting.
**Male Genitourinary** Not Present- Change in Urinary Stream.
**Musculoskeletal** Present- Muscle Pain and Neck Pain.
**Neurological** Not Present- Seizures and Tremor.
**Psychiatric** Not Present- Inability to Concentrate.
**Endocrine** Not Present- Appetite Changes.
**Hematology** Not Present- Petechiae.

SEVY,ANTHONY
4176 AUTUMN RDG DR
WEST BLOOMFIEL, MI 48323000T9
Rx# 0919293 00

LEVINE,ROBERT C
911 E 9 MILE RD
FERNDALE, MI 482201XX04
Ph:248.336-4000

## SEVY,ANTHONY
NAPROXEN SODIUM 550 MG TAB

**Assessments & Plans**   Dr ROBERT C LEVINE, M.D., 02/14/2017 12:46 PM

STRANGULATION OR SUFFOCATION, INITIAL ENCOUNTER (T71.194A)


NECK SOFT TISSUE INJURY, INITIAL ENCOUNTER (S19.9XXA)

**Medications**
Started Anaprox DS 550MG, 1 (one) Tablet BID, #60, 02/14/2017, No Refill.


BMI BETWEEN 19-24,ADULT

*TED NAMAN M.D.*