UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ANTHONY SEVY,**

Plaintiff,

v.

**COURT OFFICER PHILIP BARACH**
and ~~**COURT OFFICER HAROLD MARSHALL**~~
in their individual capacity,

Defendants.

Case No. 17-cv-13789
Hon. Laurie J. Michelson
Mag. Judge Anthony P. Patti

**MARKO LAW, PLC**
By: Jonathan R. Marko (P72450)
*Attorneys for Plaintiff*
27735 Jefferson
St. Clair Shores, Michigan 48081
P: (313) 965-4822
E: jon@jmarkolaw.com

**SEWARD HENDERSON PLLC**
By: Kali M. L. Henderson (P76479)
T. Joseph Seward (P35095)
*Attorneys for Defendants*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: khenderson@sewardhenderson.com
jseward@sewardhenderson.com

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES & PURSUANT TO 42 U.S.C. § 1988**

Defendants, **COURT OFFICER PHILIP BARACH**, by and through his undersigned counsel, submit the following Response to Plaintiff's Motion for Award of Attorney Fees & Pursuant to 42 U.S.C. § 1988. Defendant requests that the Court

deny or reduce the award significantly for the reasons outlined in the attached brief.

Defendant further relies on the issues raised in the attached brief.

Respectfully submitted,

**SEWARD HENDERSON PLLC**

/s/Kali M. L. Henderson (P76479)
*Attorneys for Defendant*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: khenderson@sewardhenderson.com

Dated: August 17, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ANTHONY SEVY,**

Plaintiff,

v.

**COURT OFFICER PHILIP BARACH**
and ~~**COURT OFFICER HAROLD MARSHALL**~~
in their individual capacity,

Defendants.

Case No. 17-cv-13789
Hon. Laurie J. Michelson
Mag. Judge Anthony P. Patti

**MARKO LAW, PLC**
By: Jonathan R. Marko (P72450)
*Attorneys for Plaintiff*
27735 Jefferson
St. Clair Shores, Michigan 48081
P: (313) 965-4822
E: jon@jmarkolaw.com

**SEWARD HENDERSON PLLC**
By: Kali M. L. Henderson (P76479)
T. Joseph Seward (P35095)
*Attorneys for Defendants*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
F: (248) 733-3633
E: khenderson@sewardhenderson.com
jseward@sewardhenderson.com

**BRIEF IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEY FEES & PURSUANT TO 42 U.S.C. § 1988**

# TABLE OF CONTENTS


Index of Authorities ........ iii

Most Controlling Authority ........ vii

Introduction ........ 1

Statement of Facts ........ 1

Law & Analysis ........ 4

I. The Billing Rates Requested are not Aligned with the Market and Should be Reduced ........ 5

A. Law – A Reasonable Hourly Rate Must Match the Market Rate to Attract Competent Counsel ........ 5

B. Application – The Suggested Rates Should be Lower Based on the Market ........ 8

II. The Hours Spent were Not Appropriate and are Unethical as Submitted ........ 12

A. Excessive and Duplicative Time ........ 12

B. Administrative Time ........ 15

C. Time that is not Compensable under § 1988 ........ 16

D. Entries that Lack Sufficient Detail ........ 18

E. Fraudulent Entries ........ 19

III. Additional Adjustments ........ 23

Conclusion ........ 25

# INDEX OF AUTHORITIES

**Cases**

*Adcock—Ladd v. Secretary of Treasury*,
227 F.3d 343 (6th Cir.2000) ....................6

*ATL, Inc. v. City of Seattle*,
2012 WL 1949044 (W.D. Wash. 2012) ....................17

*B& G Min., Inc. v. Director, Office of Workers' Comp. Programs*, 522 F.3d
657 (6th Cir. 2008) ....................15

*Burks v. Napoleon*,
No. 2:19-CV-10027, 2022 WL 1102706 (E.D. Mich. Apr. 13, 2022)....................8

*Communities for Equity v. Michigan High School Athletic Ass'n*,
2008 WL 906031 (W.D.M.I. 2008)....................17

*Copeland v. Marshall*,
641 F.2d 880 (1980) ....................13

*Coulter v. Tenn.*,
805 F.2d 146 (6th Cir. 1986) ....................6

*Doe v. Univ. of Michigan*,
No. CV 18-11776, 2021 WL 9059411 (E.D. Mich. Nov. 19, 2021) ....................8

*Ellison v. Balinski*,
625 F.3d 953 (6th Cir. 2010) ....................5

*Erbel v. Johanns*,
No. 304CV555PHILLIPSGUYT, 2008 WL 11284907 (E.D. Tenn. Sept. 5,
2008)....................15

*Esshaki v. Whitmer*,
No. 2:20-CV-10831-TGB, 2021 WL 1192913 (E.D. Mich. Mar. 30, 2021).........8

*Gaddis v. City of Detroit*,
No. 2:18-CV-13763, 2021 WL 364249 (E.D. Mich. Feb. 3, 2021)....................7

*Gibson v. Scott*, No. 2:12-cv-1128,
2014 WL 661716 (S.D. Ohio Feb. 19, 2014) ....................................................15

*Gonter v. Hunt Valve Co. Inc.*,
510 F.3d 610 (6th Cir. 2007) ..........................................................................6

*H.D.V. - Greektown, LLC v. City of Detroit*,
660 F. App'x 375 (6th Cir. 2016) ..................................................................17

*H.D.V.-Greektown v. City of Detroit*,
No. 06-11282, 2017 WL 9470887 (E.D. Mich. Sept. 28, 2017)..........................17

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ........................................................................ 5, 13, 16, 23

*Hescott v. City of Saginaw*,
757 F.3d 518 (6th Cir. 2014) ........................................................................23

*Hines v. City of Columbus*,
676 F. App'x 546 (6th Cir. 2017) ....................................................................6

*Hines v. DeWitt*,
No. 2:13-CV-1058, 2016 WL 2342014 (S.D. Ohio May 4, 2016) ....................6, 7

*Imwalle v. Reliance Med. Prod., Inc.*,
515 F.3d 531 (6th Cir. 2008) ..................................................................... 13, 20

*In re Just.*,
525 F. App'x 291 (6th Cir. 2013) ..................................................................21

*Keener v. Dep't of Army*,
136 F.R.D. 140 (M.D. Tenn. 1991) ................................................................20

*Kensu v. Buskirk*,
No. 13-10279, 2016 WL 6465890 (E.D. Mich. Nov. 1, 2016) ...........................15

*Kentucky Rest. Concepts Inc. v. City of Louisville*,
117 F. App'x 415 (6th Cir. 2004) ..................................................................17

*Local 307 v. G & M Roofing and Sheet Metal, Co. Inc.*,

732 F.2d 495, 503 (6th Cir. 1984) .............................................................. 18, 20

*M.B. v. Howard*,
555 F. Supp. 3d 1047 (D. Kan. 2021) ..................................................................13

*Miller v. Comm. Of Soc. Sec.*,
346 F. Supp. 3d 1018 (E.D. Mich. Sept. 17, 2018) ............................................16

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ..........................................................................................15

*Moore v. Sec'y of Health & Hum. Servs.*,
651 F. Supp. 514 (E.D. Mich. 1986) ...................................................................21

*Perry v. Autozone Stores, Inc.*,
624 Fed. App'x 370 (6th Cir. 2015)......................................................................18

*Pontarelli v. Stone*,
781 F. Supp. 114 (D.R.I. 1992) ...........................................................................20

*Sykes v. Anderson*,
No. 05-71199, 2008 WL 4776837 (E.D. Mich. Oct. 31, 2008) ...........................13

*U.S. Structures, Inc. v. J.P. Structures, Inc.*,
130 F.3d 1185 (6th Cir. 1997) ...............................................................................5

*Van Leuven v. Am. Blue Ribbon Holdings, LLC*,
No. 12-CV-12417, 2013 WL 4012776 (E.D. Mich. Aug. 6, 2013) .......................5

*Wayne v. Village of Sebring*,
36 F.3d 517 (6th Cir.1994) ...................................................................................23

*Webb v. Bd. of Educ. of Dyer Cty.*,
471 U.S. 234 (1985) ............................................................................................16

*Wesley v. Rigney*,
No. 10-CV-DLB-JGW, 2016 WL 6787235 (E.D. Ky. May 18, 2016)................18

**Rules**

Mich. R. Prof. Conduct 1.1(b) ....................................................................13

## MOST CONTROLLING AUTHORITY

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)

# INTRODUCTION

Plaintiff has moved for an award of fees and costs under 42 U.S.C. § 1988. Plaintiff's request is bloated by unjustified hourly rates, excessive and impermissible hours, and fraudulent submissions. Plaintiff's request is also not properly supported. Outside of the reasons already outlined in Defendant's Motion for Fees and Costs that should prevent (or at least cancel out) this request, this Response will address the issues with Plaintiff's Motion.

# STATEMENT OF FACTS

The incident underlying this case took place on February 13, 2017. [ECF No. 1, PageID.2.] The lawsuit was filed on November 22, 2017. [ECF No. 1, PageID.1.] The answer by both then-Defendants was filed on January 9, 2018. [ECF No. 5, PageID.17.] Discovery plans were submitted in January and a scheduling conference was held on February 1, 2018. [ECF No. 11, PageID.43-47; ECF No. 12, PageID.48-54; Exhibit 1, Minute Entry 2/1/2018.]

Throughout the case, Plaintiff was represented by various counsel as the case passed from Marko Law/Ernst and Marko Law, to the new Marko law. [ECF No. 1, PageID.1; ECF No. 31, PageID.180; ECF No. 51, PageID.1307.] The first attorney that defense counsel primarily corresponded with was Tyler Joseph, a former associate of Marko Law who at the time had just over one year of experience in personal injury law, and no experience in civil rights litigation. [ECF No. 112-1,

PageID.2921.] Defense counsel also worked with former Ernst and Marko associate Stephen Lovell. [ECF No. 112-1, PageID.2696] Then Ali Chara, another associate of Ernst and Marko, began handling the matter and being the primary source of communication with defense counsel. [ECF No. 112-1, PageID.2700] In fact, at one point a paralegal from defense counsel's office sent an email to Mr. Marko asking a question about outstanding discovery materials and he responded,

> ***You know that Ali Charara is handling this file please direct correspondence this case to him.***

[Exhibit 1, 10-9 Email] Even attorney Kevin Ernst handled this matter at one point, appearing for facilitation last minute after no one from Marko Law appeared.[1] Time entries have somehow been submitted that represent that Ali Charara attended facilitation though. [Exhibit 5, Henderson Affidavit; Exhibit 6, Seward Affidavit; *compare* ECF No. 112-1, PageID.2702.] This entry is plainly false. This entry, as well as the above quoted email from Mr. Marko, suggest that other entries are likely fraudulent and were not kept contemporaneously.

Plaintiff's motion provides no information about the backgrounds of either Mr. Lovell or Mr. Charara. But the State Bar website indicates that Mr. Lovell has only been practicing since 2016, providing him with experience similar to Mr.

[1] Defendant previously indicated the same to the Court in the confidential settlement statement submitted in April of this year.

Joseph. [Exhibit 2, Lovell State Bar Directory Listing] Mr. Charara has been practicing since 2013. [Exhibit 3, Charara State Bar Directory Listing] Both were associates at the time of their work on this file. [Exhibit 4, Lovell Linkedin Profile; ECF No. 31, PageID.180] Although, Plaintiff has waived any right to provide information justifying their hourly rate since he did not provide it in his underlying motion.

Plaintiff's Complaint included two defendants, and three counts [ECF No. 1, PageID.4-8.] This Court later dismissed one of those defendants, Harold Marshall, when it granted his motion for summary judgment. [ECF No. 1, PageID.1; ECF No. 55, PageID.1338, 1345.] Plaintiff abandoned one of his claims, failing to defend it. Thus, Plaintiff succeed on just 1/6 of his claims. And even that success was limited. Plaintiff had asked the jury for $9.5 million in damages, and the jury awarded only $3,000.00, plainly accepting what Defendant had believed from the start: that there is no evidence of damages beyond what occurred the day of the incident. They did not award future damages, and they did not award punitive damages. The jury awarded only .031579% of what Plaintiff requested.

Plaintiff has now submitted a request for fees. The request included improperly filed exhibits[2] that were confusing and difficult to read. Plaintiff's most

[2] This Court's Electronic Filing Rule and Procedures Rule 19(b)(3) requires that each exhibit be "filed and identified as a separate attachment to the paper and must be labeled in the electronic record with an exhibit identifier and brief narrative

important exhibit is a chart of their time entries, but it was filed so poorly that the columns with the time spent are not even included with the entries. Defendant has tried to correct this for the sake of responding and created a new spreadsheet, which is attached as Exhibit 4.[3] [Exhibit 8, Spreadsheet of Plaintiff's Time Entries Revised by Defendant]

Defendants' objections to these submissions fall into five categories: 1) excessive and duplicative time; 2) administrative time; 3) time that is not compensable under § 1988; 4) entries that lack sufficient detail; and 5) entries that are fraudulent. Defendants also object to the rates proposed by Plaintiff. Defendants also believe the time should be reduced based the slight success achieved. Each of these areas of contention are addressed below.

## LAW & ANALYSIS

To determine the appropriate compensatory award, "the district court must first arrive at the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *U.S. Structures, Inc. v. J.P.*

---

description." Plaintiff's exhibits were all grouped and attached as a single file. Plaintiff's counsel has done this more than once, demonstrating a lack of familiarity and experience practicing in the Eastern District of Michigan.

[3] Defendant must note that it is plaintiff who bears the burden of submitting entries that allow the Court to assess the hours. Plaintiff should not benefit from the work defense counsel had to perform just to make sense of this submission. It is another example of the lack of attention to detail and skill that do not justify the rate counsel seeks in this matter.

*Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "The court should then exclude excessive, redundant, or otherwise unnecessary hours." *Id.* The defendants will first address the reasonableness of the hourly rate and provide actual support for the Court to determine the loadstar rate. Next, the defendants will address the reasonableness of the time entries submitted. The analysis of each of these points demonstrates why the Bill should be reduced.

## I. The Billing Rates Requested are not Aligned with the Market and Should be Reduced

### A. Law – A Reasonable Hourly Rate Must Match the Market Rate to Attract Competent Counsel

Calculating reasonable attorney fees involves multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010). This is referred to as the lodestar method and it is widely employed throughout the federal courts, including the Sixth Circuit. *Id.* "The court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Van Leuven v. Am. Blue Ribbon Holdings, LLC*, No. 12-CV-12417, 2013 WL 4012776, at *2 (E.D. Mich. Aug. 6, 2013). The rate must be reasonable and "adequately compensatory to attract competent counsel yet which avoids producing

a windfall for lawyers." *Id.* at *3 (quoting *Adcock—Ladd v. Secretary of Treasury*, 227 F.3d 343, 349 (6th Cir.2000)).

A reasonable billing rate is assessed using the prevailing market rate at which lawyers of comparable skill and experience command within the venue of the court of record. *Adcock-Ladd v. Sec of Treas.*, 227 F.3d 343, 350 (6th Cir. 2000). "The appropriate rate, therefore, is **not** necessarily the exact value sought by a particular firm but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co. Inc.*, 510 F.3d 610, 618 (6th Cir. 2007) (emphasis added). "In general, the prevailing market rate is different from the prices charged to well-to-do clients by the most noted lawyers and renowned firms in a region." *Hines v. DeWitt*, No. 2:13-CV-1058, 2016 WL 2342014, at *2 (S.D. Ohio May 4, 2016), aff'd sub nom. *Hines v. City of Columbus*, 676 F. App'x 546 (6th Cir. 2017) (quoting *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)). "[A]ttorneys are not compensated above market rates due to renown." *Id.* at *4 (citing *Coulter v. Tenn.*, 805 F.2d 146, 149 (6th Cir. 1986)).

Plaintiff's counsel has submitted extreme billing rates with no justification for the rates. Information for some of the associates, Lovell and Charara, is not provided. They attempt to bolster these rates with affidavits of other attorneys that would also benefit from the award of high rate. Plaintiff also failed to consider the protracted timeline of this case that would dictate a lower rate for the first half of the case given

that the 2020 Economics of Law Survey represents a significant uptick in rates since the 2017 Economics of Law Survey. [Exhibit 7, 2017 Economics of Law Survey] Plaintiff only attached the 2020 survey. [ECF No. 112-1, PageID.2755-2826.] Additionally, a review of attorney fee awards in civil rights lawsuits of attorneys with similar, or more significant experience, demonstrate that these rates are excessive.

Defendants propose that the Partners should be awarded a billing rate of $375/hour, consistent with recent awards within this District for the plaintiff's local counsel, Goodman Hurwitz & James, P.C. In *Gaddis v. City of Detroit*, No. 2:18-CV-13763, 2021 WL 364249, at *3 (E.D. Mich. Feb. 3, 2021), the firm of Goodman Hurwitz & James, P.C. , was awarded $350 and hour. In 2016, when the Fieger firm requested fees, the Southern District of Ohio[4] found them to be excessive and awarded lower than requested rates ranging from $350 for a partner with 12 years of experience, to $150 for an associate with two years of experience. *Hines*, 2016 WL 2342014, at *4. In *Burks v. Napoleon*, a civil rights case, attorney Sarah Prescott, partner at the firm of Salvatore Prescott & Porter, who has been practicing since 2007 and attended Harvard Law School was only awarded $375/hour in April of

[4] Defendant recognizes that the prevailing market in this case was Ohio, but Plaintiff relies on an affidavit of the Fieger firm's lead attorney, Geoffrey Fieger, to support the request. Thus, the Fieger firm should be aware that their estimations have been found to be excessive. The *Hines* case thoroughly outlines the billing abuses of the Fieger firm.

2022.[5] *Burks v. Napoleon*, No. 2:19-CV-10027, 2022 WL 1102706, at *2 (E.D. Mich. Apr. 13, 2022). In November 2021 in *Doe v. Univ. of Michigan*, No. CV 18-11776, 2021 WL 9059411, at *6 (E.D. Mich. Nov. 19, 2021), report and recommendation adopted, No. 2:18-CV-11776-TGB, 2022 WL 2317261 (E.D. Mich. June 28, 2022), attorney Deborah Gordon was awarded $600 per hour based on her "43 years of experience as a top lawyer in civil rights and other personal injury litigation." While an associate with 3-5 years was awarded a rate of $320 per hour, an associate with 2 years of experience was awarded $209 per hour, and law clerks and staff a rate of $25 per hour.

In March of 2021, attorney Saura Sahu requested a rate of $450 per hour based on twenty years of experience, the fact that he was in the top 1% of attorneys in the state, and his regular billing rate. *Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2021 WL 1192913, at *5 (E.D. Mich. Mar. 30, 2021). The District Court awarded him only the median rate of $300 per hour, holding that counsel's evidence was not sufficient to justify even the 75th percentile. *Id.*

### B. Application – The Suggested Rates Should be Lower Based on the Market

#### *1. Rate for Marko*

[5] https://sbm.reliaguide.com/lawyer/48167-MI-Sarah-Prescott-46158

Mr. Marko argues that he should be awarded $950 per hour because of his experience, skill, involvement in the legal community, and renown. He also cites to other state court opinions where he was awarded high hourly rates. [ECF No. 112, PageID.2265.] He also cites to the *Griffey* case as an example of his great skill. He does not mention, though, that in *Griffey*, in April of 2021, he was awarded $302 per hour. [Exhibit 7, Griffey Opinion] That opinion also noted how Mr. Marko admitted that his time entries were not kept contemporaneously and that there were assembled after the fact. Here too, Mr. Marko has not sworn in his affidavit that these records were kept contemporaneously. [ECF No. 112-1, PageID.2683.] He has only attested that they are "accurate and correct to the best of [his] knowledge." [ECF No. 112-1, PageID.2683.] However, the issues outlined in Section II(G) demonstrate why that is not enough. The *Griffey* opinion is demonstrative not only of Mr. Marko's unethical billing practices, but why his level of skill does not justify such a rate.

Other examples beyond those above and in Section II of why Mr. Marko does not fall within the 95th percentile were pervasive throughout this case. First, he was not familiar with the facts of this case. Prior to trial, and even during, he indicated that he did not even know what materials (photographs) had been provided to Defendant. He also claimed that a video provided to him in Defendants' Initial Disclosures was defective, but he did not mention it until just before trial, indicating that he had never reviewed these materials or devoted appropriate attention to this

case. Second, his client was offered more money than the jury awarded multiple times and he advised against accepting such a settlement. Third, his billing entries reveal his failure to supplement discovery responses. On March 1, 2019, he billed for noting Plaintiff's updated address but never supplemented discovery requests with this information, despite Plaintiff's claims that he had to move from Royal Oak because of this incident. [ECF No. 112-1, PageID.2702; Exhibit 10, Defendants First Discovery Requests]

The *Griffey* opinion also explain why Mr. Marko casts himself in "too bright" a light. [Exhibit 7, Griffey Opinion] The judge found that Mr. Marko had exaggerated his successes and taken credit for others' success. [Exhibit 7, Griffey Opinion] The opinion notes that Mr. Marko stated he had, in fact, only first chaired ten cases. [Exhibit 7, Griffey Opinion]

Such a reduction is also consistent with the Michigan State Bar's Economics of Law Practice surveys The following charts display the relevant categories:

| 2020 | **Median** | **Mean** |
|---|---|---|
| Years in Practice (full time) (13 years)[6] | 280 | 297 |
| Office Location (Downtown Detroit) | 308 | 343 |
| Field of Practice (Civil Rights) | 305 | 332 |

[6] Mr. Marko has been practicing since December 22, 2008, per the Michigan State Bar.

| | | |
|---|---|---|
| County (Wayne) | 295 | 320 |
| Managing Partner | 300 | 327 |
| Equity Partner/ Shareholder | 330 | 349 |
| **AVERAGE** | **303** | **328** |

[ECF No. 112-1, PageID.2765-27; Exhibit 9, 2020 Economics of Law Survey Income & Billing Rate Summary Report[7]] Thus, Defendant believes that an appropriate rate for Mr. Marko is $328 per hour.

2. *Associates*

Defendants propose that the rates for the associates be reduced to 241.50 per hour due to their relative inexperience and Plaintiff's failure to submit documentation regarding Mr. Lovell and Mr. Charara.

| | **Median** | **Mean** |
|---|---|---|
| Years in Practice (1-2) | 217 | 233 |
| Associate | 250 | 250 |
| **AVERAGE** | 233.50 | 241.50 |

Defendant proposes that the paralegal rate be reduced to $120/hour, for the reasons stated by Magistrate Judge Patti in a 2019 opinion in *N. Atl. Operating Co.*,

[7] Plaintiff filed only the desktop reference. Defendant now submits the Income & Billing Rate Summary Report that provides additional information.

*Inc. v. Dunhuang Grp.*, No. 4:18-MC-51051, 2019 WL 4686495, at *5 (E.D. Mich. Sept. 26, 2019) (holding that $120 was a reasonable adjustment from last known paralegal rate of $90/hour for paralegals in the 75th percentile in 2007).

Plaintiff has not provided a total number of hours for each individual, submitting only a chart. Thus, calculating the total becomes extremely difficult and this something Plaintiff bears the burden of proving. Because such totals were not provided, and for the reasons outlined below that suggest not all time was expended by the attorneys noted in the chart, Defendant recommends the Court set one hourly rate for all individuals. The average of all three billing rates is **229.83**. This would reduce the fee award to **$154,721.56** (673.2 x 229.83).

## II. THE HOURS SPENT WERE NOT APPROPRIATE AND ARE UNETHICAL AS SUBMITTED

There are seven key areas of dispute with the hours submitted by Plaintiff's counsel: 1) excessive and duplicative time; 2) administrative time; 3) time that is not compensable under § 1988; 4) entries that lack sufficient detail; and 5) entries that are fraudulent. Each of these issues is addressed below. Due to the significant number of issues and long, complicated, undetailed chart submitted by Plaintiff, Defendants recommend that the Court apply a percentage reduction, instead of parsing out the individual entries. Each issue discussed below provides plenty of examples of why an overall reduction is more appropriate.

### A. Excessive and Duplicative Time

"Attorneys who seek fees have an obligation to maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008). As the Supreme Court noted,

> Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. **Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority.**'

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original)). Under this logic, hours spent to bring an attorney up to speed on a relevant legal area that would typically be absorbed into a firm's overhead are excessive and unreasonable. *M.B. v. Howard*, 555 F. Supp. 3d 1047, 1077 (D. Kan. 2021); see also Mich. R. Prof. Conduct 1.1(b).

In cases where the entries are extensive and complicated, a fee award may be reduced by a percentage. *Sykes v. Anderson*, No. 05-71199, 2008 WL 4776837, at *3 (E.D. Mich. Oct. 31, 2008), aff'd, 419 F. App'x 615 (6th Cir. 2011). In *Sykes*, the District Court noted that it was appropriate to make a percentage reduction across the board in "complicated" cases with complicated time records. *Id.* This method

was employed instead of trying to pick out, here and there, which entries were appropriate and justified. *Id.*

Excessive expenditures of time are flippantly included in Plaintiff's spreadsheet. For example, Mr. Marko billed 4.4 hours for researching First Amendment and Fourth Amendment claims despite his apparent skill and expertise in this area of law that justifies a rate of $950 per hour. [ECF No. 112-1, PageID.2685.] There appears to be multiple times when Mr. Marko duplicated work by repeatedly reviewing the file and then for reviewing the individual materials. For instance, he reviewed the Royal Oak FOIA response records on 8/16/2017, but then reviewed the photos that were taken by Royal Oak Police on 9/13/2017. That same September entry appears to indicate that he also performed unnecessary work because Plaintiff had already acquired the Royal Oak records. This is only compounded by the fact that on 5/22/2017, Mr. Marko billed for attempting to locate civil witness listed. This witness, as trial bore out, was only listed in the Royal Oak Police Report, which the other billing records indicate Mr. Marko did not review until August. If he already had the report, why did he bill so much time for FOIA requests to Royal Oak?

The amount of time spent reviewing form records request, deposition notices, and discovery requests is also demonstrative of excessive billing. The time spent preparing form correspondence is equally demonstrative. See entries on 7/27/2018,

8/1/2018. On 7/27/2018, Mr. Joseph billed six minutes (.1) for reviewing each of Defendants' subpoenas to plaintiff's medical providers.

They also appeared to have spent time reviewing materials that did not advance the case. For example, Mr. Marko would review transcripts of depositions he did not attend. See entries on 8/10/2018, 8/13/2018, 10/16/2018. This duplication of efforts does not advance the case and is excessive. It should not be compensated.

**B. Administrative Time**

Clerical work is different than that which requires a paralegal; it requires no legal knowledge and should not be compensable. *Gibson v. Scott*, No. 2:12-cv-1128, 2014 WL 661716, at *4 (S.D. Ohio Feb. 19, 2014); *Wesley v. Rigney*, No. 10-CV-DLB-JGW, 2016 WL 6787235, at *4 (E.D. Ky. May 18, 2016); *Erbel v. Johanns*, No. 304CV555PHILLIPSGUYT, 2008 WL 11284907, at *3 (E.D. Tenn. Sept. 5, 2008) (rejecting clerical tasks under Supreme Court holding in *Missouri v. Jenkins*, 491 U.S. 274 (1989)).

Activities that have been deemed "clerical" by the Sixth Circuit include: "receiving and filing correspondence" (*B& G Min., Inc. v. Director, Office of Workers' Comp. Programs*, 522 F.3d 657, 666 (6th Cir. 2008)); "copying exhibits and preparing exhibit books" (*Kensu v. Buskirk*, No. 13-10279, 2016 WL 6465890, at *3 (E.D. Mich. Nov. 1, 2016)); "drafting and sending requests for records" (*Id.*); "editing final pretrial order to include exhibit numbers and filing it" (*Id.*). *See also*,

*Miller v. Comm. Of Soc. Sec.*, 346 F. Supp. 3d 1018, 1033-34 (E.D. Mich. Sept. 17, 2018) (where court addressed individual billing entries distinguishing clerical tasks).

Administrative activities are weaved throughout Plaintiff's submissions. For example, on February 2, 2021, Mr. Marko billed for reviewing a notice to appear and updating the calendar, despite clearly having the assistance of staff at the time. [ECF No. 112-1, PageID.2706.] Mr. Marko performed other obvious administrative tasks on 5/22/2017, 2/2/2018, 7/10/2018, 8/15/2018, 11/8/2018, 8/9/2019, 8/14/2020, 2/2/2021, 4/21/2022. Other entries appear to suggest that they include administrative work, but it is difficult to tell due to the descriptions and singular billing entries (opposed to separate entries). For instance, on 7/17/2018, Mr. Joseph billed for drafting ***and serving*** a notice of deposition. [ECF No. 112-1, PageID.2696.] Similar entries are found on 8/13/2018 (a re-notice for a simple change from Michigan Court Rules to Federal Court Rules) (Exhibit 11, Notice and Re-notice).

**C. Time that is not Compensable under § 1988**

Under § 1988, actions that are recoverable or compensable are those that are "reasonably expended on the litigation." *Webb v. Bd. of Educ. of Dyer Cty.*, 471 U.S. 234, 242 (1985) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Some pre-suit fees may be compensable if they were reasonably expended on the litigation; such fees include "drafting of the initial pleadings and the work associated

with the development of the theory of the case." *Id*. But that does not include time for pre-suit administrative proceedings, *Id*.; nor "[t]ime spent lobbying a legislative body prior to filing," *Kentucky Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 420 (6th Cir. 2004); nor time spent with reporters and media as such fees "do not comport with § 1988's purpose to support civil rights litigation." *H.D.V. - Greektown, LLC v. City of Detroit*, 660 F. App'x 375, 386 (6th Cir. 2016), see underlying Report *H.D.V.-Greektown v. City of Detroit*, No. 06-11282, 2017 WL 9470887, at *6 (E.D. Mich. Sept. 28, 2017); see also *Communities for Equity v. Michigan High School Athletic Ass'n,* 2008 WL 906031 (W.D.M.I. 2008)

Certain pre-suit fees for settlement negotiations and client communications have been denied because only those that are "ordinarily necessary" to advance the litigation are compensable. *ATL, Inc. v. City of Seattle*, 2012 WL 1949044 (W.D. Wash. 2012).

Here, Plaintiff has billed excessive fees for pre-suit research, negotiation attempts, and media contacts. For instance, pre-suit caselaw research totals 21.6 hours. They also billed 8 hours for a Complaint that is basic in all of its allegations. [ECF No. 1, PageID.1.] Plaintiff also billed for time spent on referral fee work that is not related to the litigation. Plaintiff also billed for work that was not related to this litigation, i.e., researching claims against the City of Royal and prosecutors. Plaintiff also billed for pre-suit communications with the City of Royal Oak,

including the mayor. Such correspondence was advocating on behalf of his client, but not related to the litigation itself.

### D. Entries that Lack Sufficient Detail

Billing entries which are vague and only a few general, nonspecific words long are insufficient. *Wesley v. Rigney*, No. 10-CV-DLB-JGW, 2016 WL 6787235, at *4 (E.D. Ky. May 18, 2016); *Perry v. Autozone Stores, Inc.*, 624 Fed. App'x 370, 373 (6th Cir. 2015). Documentation offered in support of hours charged must be "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Local 307 v. G & M Roofing and Sheet Metal, Co. Inc.*, 732 F.2d 495, 503 (6th Cir. 1984). For example, something like "Prepare and Draft Appellate Brief" is too difficult to ascertain whether the amount of time was reasonable without a more detailed description. *Perry*, 624 Fed. App'x at 373.

Several of the entries submitted here are like those in *Perry*. On February 27, 2019, Mr. Charara billed five hours for "Drafted, reviewed, and revised Plaintiff's Response to Defendants' Motion for Summary Judgment." [ECF No. 112-1, PageID.2702.] This is not an entry defense counsel would ever submit to a client because it does not provide detail as to the actual work performed for such a large block of time; it does not address how much time was spent on each issue/argument, how much time was spent reviewing materials, how much time was spent

researching, or how much time was spent drafting. See also the entries on 1/25/18 [ECF No. 112-1, PageID. 2690;] 8/3/2018 [ECF No. 112-1, PageID.2697;] 2/15/2019 [ECF No. 112-1, PageID.2702;] 1/29/21 [ECF No. 112-1, PageID.2705;] 4/13/22 [ECF No. 112-1, PageID.2706;] 5/17/22 [ECF No. 112-1, PageID. 2709;] 5/18/22 [ECF No. 112-1, PageID. 2709;] 5/31/22 [ECF No. 112-1, PageID.2712-2713.]

Several entries also include the non-specific description of "Review file" without providing a reason for why the file review was necessary. For instance, on January 15, 2018, Mr. Joseph billed .5 hours for "Review file; Drafted and sent correspondence to Mr. Sevy regarding upcoming mandatory scheduling conference; discuss with Jon." [ECF No. 112-1, PageID.2690.] It is not obvious why he would have to review the "file" to send this letter, or why this letter would have to be sent despite the fact that Mr. Sevy was not required to attend, or why it would take .5 hours, or why it would have to be discussed. This entry does not provide sufficient detail to justify the time spent on a simple task. Similar entries are seen on 7/21/2017, 11/9/2017, 1/19/2021.

**E. Fraudulent Entries**

*1. Law*

"The key requirement for an award of attorney fees is that '[t]he documentation offered in support of the hours charged must be of sufficient detail

and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended ...” *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (citing *Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)). When fee petitions contain misrepresentations and fraud, exclusion of such entries and reductions are the minimum a district court should do. *See also Keener v. Dep't of Army*, 136 F.R.D. 140, 150 (M.D. Tenn. 1991), aff'd, 956 F.2d 269 (6th Cir. 1992); *Pontarelli v. Stone*, 781 F. Supp. 114, 122 (D.R.I. 1992).

In *Young v. Smith*, 905 F.3d 229, 233 (3d Cir. 2018), the Third Circuit affirmed the district court’s decision to deny the award of § 1988 fees because the plaintiff’s counsel submitted misrepresentations in a fee petition. The plaintiff’s attorney was also sanctioned under 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11, and referred to the attorney disciplinary board. *Id.* The problematic fee petition included “padded” hours, “inflated” rates, work that was not compensable under the terms of a settlement agreement. *Id.* at 235. The Third Circuit also relied on the fact that the plaintiff’s counsel had defiantly insisted that it was defense counsel’s job to determine the accuracy of the records and ferret out her inappropriate entries. *Id.*

Within the Eastern District of Michigan, Rule 11 sanctions have been issued for inappropriate fee petitions. In *Moore v. Sec'y of Health & Hum. Servs.*, 651 F. Supp. 514, 516 (E.D. Mich. 1986), the district court wrote,

> The submission of an itemized documentation of hours which is patently unreasonable borders upon an abuse of process and a fraud upon the court. Some of the hours claimed were clearly not well grounded in fact. In light of the blatant over-statement of time spent on this matter, the Court finds the imposition of sanctions to be appropriate.

The Sixth Circuit has equally admonished improper fee petitions when it affirmed the district court's issuance of discipline for the submission of an improper fee petition. *In re Just.*, 525 F. App'x 291, 293 (6th Cir. 2013). In upholding such discipline, the Sixth Circuit wrote that the submission of a false and inflated fee petition that included work that the attorney "himself had not entirely done," was "unethical" and brought the "court or bar into disrepute." *Id.* The attorney was also required to surrender 25% of any awarded fees from the petition to the United States. *Id.*

*2. Application*

There are clear indications that this fee petition is improper because the entries are not accurate, hours are padded, and the rates inflated. The entry reflecting that Ali Charara attended facilitation is the first and biggest indicator of improper entries. [Exhibit 5, Henderson Affidavit; Exhibit 6, Seward Affidavit; *compare* ECF No. 112-1, PageID.2702.] This entry, in conjunction with the *Griffey* opinion, raises

serious questions as to how many of these entries are genuine. Other entries wherein associates attended events but Mr. Marko appears to do any behind the scenes tasks that would support such attendance, also indicate these entries may not be entirely accurate. For instance, Mr. Marko reviewed a request for authorizations and Mr. Joseph contacted Mr. Sevy about them.[8] [ECF No. 112-1, PageID.2695.] Mr. Marko reviewed the filings for Defendants' Motion to Strike Dr. Shiener, but Mr. Chara "revised" the response and appeared for the motion (and billed for preparing for it).[9] Mr. Charara attended the Defendants depositions without preparing at all. [ECF No. 112-1, PageID.2700.]

Another indication lies in the pre-suit research and retainer of Mr. Glaza. The billing records indicate this was done prior to the complaint being filed. [ECF No. 112-1, PageID.2687-2688.] Yet, Mr. Glaza was not named in Plaintiff's answers to interrogatories in May of 2018. [Exhibit 12, Plaintiff's Answer to Interrogatories re: Experts] Nor was he listed on Plaintiff's witness list despite a long list of potential experts. [ECF No. 20, PageID.73-79.] But Dr. Shiener who was consulted in pre-suit was included in both. This failure was highlighted to Mr. Charara in emails as

[8] The .3 billed for the receipt of standard HIPAA authorizations reflects the excessive time and unreasonable use of resources devoted to this case. See also ECF No. 112-1, PageID.2698, wherein Mr. Marko billed .3 to review tax authorizations for the State of Michigan and IRS.

[9] His time preparing a response appears to be duplicative of Mr. Marko's efforts in preparing a response.

well. [Exhibit 12, Expert Emails] Either Plaintiff's counsel was highly unethical in not disclosing this expert in either, or Mr. Glaza was not retained until later.

The disclosure of Mr. Glaza also highlights another inaccuracy in Mr. Marko's submission. On 10/2/2018, Mr. Marko billed for "Drafted, reviewed and served Plaintiff's Expert Disclosure of Kenneth Glaza on Defendant." [ECF No. 112-1, PageID.2700.] Yet, the email chain between counsel about the late disclosure of this expert demonstrates that it was served by Mr. Marko's assistant, not him. [Exhibit 12, Expert Emails]

This handful of examples is sufficient for this Court to call into question the legitimacy of all of these entries and either deny outright, or reduce the fee award appropriately. Defendants again propose that an overall percentage reduction would be appropriate to save the Court time from parsing through each individual entry and determining how accurate each is.

## III. ADDITIONAL ADJUSTMENTS

The Court is permitted to make additional adjustments to this award. One such adjustment is to reflect the results obtained by considering whether any of Plaintiff's claims failed and whether the "level of success" justifies the hours reasonably expended. *Hescott v. City of Saginaw*, 757 F.3d 518, 527 (6th Cir. 2014) (quoting *Wayne v. Village of Sebring*, 36 F.3d 517 (6th Cir.1994)); *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Supreme Court says that consideration of these questions

is "particularly crucial" when the plaintiff only prevails on some of his claims. *Hensley*, 431 U.S. at 434. Even when the failed claims are so significantly related that it becomes difficult to parse the hours expended between claims, the Court must still scrutinize the "overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," i.e., excellent results equals the full fee and limited success equals excessive time expenditures that should be reduced. *Id*. at 435-36. The Supreme Court best explained why reductions are required when there has been limited success:

> This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

*Id*. at 436.

Here, such a reduction is required and necessary. Complaint was filed against two defendants, but this Court later dismissed one of those defendants, Harold Marshall, when it granted his motion for summary judgment. [ECF No. 1, PageID.1; ECF No. 55, PageID.1338, 1345.] Additionally, Plaintiff filed three counts in the Complaint and succeed on just one. [ECF No. 1, PageID.4-8.] Plaintiff even abandoned one of his claims, failing to defend it. Thus, Plaintiff succeed on just 1/6 of his claims. And even that success was limited. Plaintiff had asked the jury for $9.5 million in damages, and the jury awarded only $3,000.00, plainly accepting what

Defendant had believed from the start: that there is no evidence of damages beyond what occurred the day of the incident. They did not award future damages, and they did not award punitive damages. The jury awarded only .031579% of what Plaintiff requested; this can hardly be read as anything more than de minimus.

## CONCLUSION

The Court should reduce both the hourly rate, which is unsupported by the market, and the hours expended. Defendants have made significant efforts to identify several relevant areas that challenge the reasonableness of all of Plaintiff's submitted hours. The egregiousness of these entries justifies a large overall reduction.

The Court should then reduce the award based on the level of success obtained in this matter. Plaintiff succeeded in recovering only .031579% of what he sought, and well under what Defendants offered to him at the very beginning of this case. To simplify matters, the Court should ensure that Plaintiff's recovery of fees is equally as successful and award only 031579% of the reasonable hours.

Respectfully submitted,

**SEWARD HENDERSON PLLC**
/s/Kali M. L. Henderson (P76479)
*Attorneys for Defendants*
210 East 3rd Street, Suite 212
Royal Oak, Michigan 48067
P: (248) 733-3580
E: khenderson@sewardhenderson.com

Dated: August 17, 2022

## PROOF OF SERVICE

I hereby certify that on **Wednesday, August 17, 2022**, I electronically filed the foregoing document with the Clerk of the court using the ECF system, which will send notification to the following: ***All Parties and Attorneys of Record.***

/s/Kali Henderson
**SEWARD HENDERSON PLLC**
210 East 3rd Street, Suite 212
Royal Oak, MI 48067
T: (248) 733-3580
F: (248) 733-3633
E: Khenderson@sewardhenderson.com