# EXHIBIT 7

STATE OF MICHIGAN

IN THE 7TH CIRCUIT COURT FOR THE COUNTY OF GENESEE

FILED
APR 14 2021
GENESEE COUNTY CLERK

LISA GRIFFEY and,
CEDRIC GRIFFEY

PLAINTIFFS,

CASE NO. 17-108535-CD

v.

JUDGE DAVID J. NEWBLATT

MICHIGAN DEPARTMENT OF CORRECTIONS,

DEFENDANT.

______________________________________/

**OPINION AND ORDER REGARDING SANCTIONS PURSUANT TO MCR 2.403(O)**

A. Introduction

Before the Court is Plaintiff's Lisa Griffey's (Plaintiff) request for attorney fees and costs. The parties agree that she is entitled to case evaluation sanctions pursuant to MCR 2.403(O) with respect to her claims only. The parties disagree as to the amount of attorney fees and what costs are allowable. The Court conducted an evidentiary hearing and accepted written closing argument.

B. Mr. Marko's Attorney Fee

The calculation of attorney fees pursuant to MCR 2.403(O) is governed by *Smith v Khouri*, 481 Mich 519 (2008). *Smith* began with the recognition that the general rule, the "American rule," is that parties pay their own attorney's fees and costs. As such, to recover them from an opposing party would have to be pursuant to a specific statute or court rule. The Supreme Court "has specifically authorized case-evaluation sanctions through court rule, allowing the awarding of reasonable attorney fees to promote early settlements." Id at 526-27. It further noted:



2017108535CD

The purpose of this fee-shifting provision is to encourage the parties to seriously consider the evaluation and provide financial penalties to the party that, as it develops, "should" have accepted but did not. This encouragement of settlements is traditional in our jurisprudence, as it deters protracted litigation with all its costs and also shifts the financial burden of trial onto the party who imprudently rejected the case evaluation. This rule, however, is not designed to provide a form of economic relief to improve the financial lot of attorneys or to produce windfalls. Rather, it only permits an award of a *reasonable* fee, ie., a fee similar to that customarily charged in the locality for a similar legal services, which of course, may differ from the *actual* fee charged or the highest rate the attorney might otherwise command. [case citations omitted] Id at 528.

In other words, the intent is promote judicial economy by encouraging resolutions through the case evaluation process rather than to provide "highest rate the attorney might otherwise command."

This sentiment is especially pertinent in this case, where the jury verdict is large enough to cover attorney's fees and costs and still provide a large recovery to Plaintiff. As the Court previously stated:

The verdict in the instant case is substantial: $11,382,189. This Court finds that such a verdict is large enough to adequately compensate the Griffeys for the harms they suffered even with the fee arrangement they have in place with Mr. Marko without harming the goals of ensuring competent legal representation in civil rights cases and obtaining compliance with ELCRA. As such, this Court will not award attorney's fees. *Griffeys v MDOC*, Opinion and Order Regarding Post-Trial Motions.

Although the Court has no discretion with regard to whether to award case evaluation sanctions, it does have a responsibility to ensure a proper calculation. *Smith* prescribed for trial courts the method for determining what constitutes reasonable attorney fees as follows:

We take this opportunity to clarify that the trial court should begin the process of calculating a reasonable attorney fee by determining factor 3 under MRPC 1.5(a), ie., the reasonable hourly or daily rate customarily charged in the locality for similar legal services, using reliable surveys or other credible evidence. This number should be multiplied by the reasonable number of hours expended. This will lead to a more objective analysis. After this, the court may consider making adjustments up or down in light of the other factors listed in [*Wood v Detroit Automobile Inter-Ins Exch*, 413 Mich 573 (1982)] and MRPC 1.5(a) In order to aid appellate review, the court should briefly indicate its view of each of the factors. Id at 522.

For the adjustment factors to consider, *Smith* directs trial courts to use the "other factors" listed in *Woods*. However, it exempts two of the factors—the amount involved and the results obtained and whether the fee is fixed or contingent—which it considers irrelevant to the analysis. *Smith* at 534-35, n 20.

*1. Reasonable rate*

The Court must first establish a reasonable hourly rate for Mr. Marko. To do so, the Court finds it appropriate to refer to the Michigan State Bar's 2017 Economics of Law Practice Attorney Income and Billing Rate Summary Report (2017 Survey). The Court agrees that this publication is a "reliable survey" and constitutes "credible evidence" of "the reasonable hourly or daily rate customarily charged in the locality for similar legal services" that is appropriate to determine a reasonable attorney fee for Mr. Marko.

As Mr. Marko was functioning as an employment plaintiff attorney within Genesee County in the Griffey case, survey factors that are relevant in the analysis are field of practice (Table 7) and county (Table 8). Averages of these factors yield a per hour median fee of $267.5 and a 75th percentile fee of $337. The Court finds the appropriate rate to be the average of these two. This amount is $302.

*2. Reasonable number of hours expended*

Next, the Court must determine the reasonable hours expended. Plaintiff is entitled to be compensated only for the number of hours actually worked on the claim tried that was made necessary by the denial of case evaluation for that claim.

It is Plaintiff's burden to prove the reasonable hours expended. To do so, Mr. Marko submitted a spreadsheet as an exhibit to his brief that indicated that he worked 899.6 hours. He did not initially file an affidavit verifying that he worked this number of hours. Mr. Marko testified that he did not keep contemporaneous records. Rather, he assembled the spreadsheet after the fact using block billing.

Mr. Marko's failure to document his time by creating contemporaneous records is an immense barrier to credibly proving the number of hours expended. This is his fault and no one else's. From the beginning of the case, he knew that he would be asking for attorney fees, both under ELCRA and as case evaluation sanctions. He knew that it was his client's burden to prove them. Defendant called as an expert Steven Potter, who the Court found to be very credible. Mr. Potter testified that plaintiff attorneys do not have a different standard for keeping track of their time than do defense attorneys when asking for attorney fees. Mr. Marko could have created contemporaneous records of his time, which would have been credible evidence. He chose not to

do so. His explanation for not keeping track—that he was too focused on the lawyering to be bothered—is, frankly, absurd.[1]

Unfortunately, the Court is asked to take his word for it, because his after-the-fact tallying prevented a detailed description of services rendered such that all that is available for the Court to inspect is his block billing. As Mr. Potter testified, that is not the accepted practice. This is especially concerning given, as Defendant has successfully pointed out, the "series of anomalous entries" in Mr. Marko's listings[2]. Mr. Potter described them as "red flags."

Another problem is that Mr. Marko has made no effort to delineate between hours dedicated to Plaintiff's claim, for which she is entitled to be compensated, and those for Mr. Griffey, who is not entitled to compensation. In other words, the Court must ensure that Plaintiff does not receive a windfall by receiving compensation for efforts expended litigating Mr. Griffey's claim.

As such, the Court is in a difficult position. On one hand, the Court understands that Mr. Marko expended many hours that he otherwise would not have had to expend had Defendant accepted case evaluation for Plaintiff's claim. On the other hand, the Court finds that Mr. Marko's billings are not credible. The Court needs a way forward.

Fortunately, Defendant's proposal is reasonable. Defendant's approach is to begin with the hours cited by Plaintiff and then make adjustments accordingly. The first adjustment is to do what Mr. Marko failed to do—delineate between the claims so as to only compensate for the allowable claim. Plaintiffs' position that such a delineation could not be made is without merit. Although there was some overlapping aspects, the case was divided between Plaintiff's probation office and Mr. Griffey's prison. Defendant proposes to prorate the hours in proportion to the verdict in the case. However, the Court, having presided over the trial, was in a position to see that the case was approximately evenly divided between the claims. Further, there was some parts of the case that would have applied to both set of claims. As such, the Court will discount Mr. Marko's submitted hours by 40%. This would set expended hours at 539.76.

The next adjustment is for the lack of credibility of the records. Defendant "suggests that the appropriate reduction here is one-third, which takes into account the inadequacies for the multiple block billings, the anomalies previously discussed, and the time records that are obviously estimates which, at best, approximate the hours expended." The Court finds this a reasonable, even generous, suggestion. As such, the Court will adopt it. This reduces the hours to 359.84.

---

[1] And here is another thing that the Court found absurd: Mr. Marko's claim in a footnote that, "these hours are grossly underreported, and the true amount of attorney time is much greater." That he would make this statement and then bill for days where he claimed to have worked 12 and 16 hour is preposterous. As Mr. Potter testified, this is not physically possible. Yet, like it's Monopoly money, he cavalierly requests fees of $9,000 and $12,000 respectively. This is more per day than many court appointed criminal defense attorneys earn to try an entire capital case.

[2] Defendant included a "List of Suspicious Billings" as Tab 7 of its exhibit book.

*3. Adjustments*

Now that the Court has considered the rate and number of hours expended, it must consider whether to adjust it "up or down in light of the other factors listed in *Wood* and MRPC 1.5(a)."

The first adjustment factor is the time and labor required, the novelty and difficulty of the questions and necessary skill. Although the legal claims themselves are not particularly novel, litigating cases against Defendant presents unique challenges. Defendant is a large and complex bureaucracy with a unique culture. It takes effort to amass the knowledge necessary to effectively deal with those unique issues. Mr. Marko brought with him to the case considerable experience litigating employment cases against Defendant, which he gained through his employment with the Rasor Law Firm. This merits an upward adjustment.

The second and third factors were preclusion of other employment caused by the case and the time limit imposed by the case. Plaintiff's closing argument brief does not indicate that this actually happened, only that such could happen with this kind of case.

With regard to the nature and length of the professional relationship, this was a one-time representation and does not justify an adjustment.

The final factor is the experience, reputation, and ability of the lawyer. The parties spent most of their time and energy litigating this factor. The Court did its level best to avoid what Attorney Bendure referred to as "a feces-throwing exhibition of simians at a zoo" and focus on the facts.

Mr. Marko has had a successful career thus far. He clerked for Justice Marilyn Kelly. He has been an attorney for 11 years, during which he was an associate at two different plaintiff law firms, at which he has been very successful; managing a docket and assisting in large verdict cases. He has created his own law firm and has been successful.

Mr. Marko asserts that his status is such that deserves to be paid $750 per hour. In order to justify this, he seeks to cast himself in the brightest light possible. Too bright it turns out. There is no question that his result in the Griffey case was impressive. However, Mr. Marko sought to give the Court the impression that the case was not, as Defendant termed it, a "one-off." In his resume, he claimed to have "brought several cases to verdict at trial, including an [sic] employment discrimination cases against the Department of Corrections (over $2,000,000 collected) and several other high profile cases." Further, in his brief in support, he claimed to have "obtained several favorable jury verdicts, including a large verdict against the Michigan Department of Corrections, which Mr. Marko argued and kept on appeal. A fair reading of all of this is that Mr. Marko is claiming that he first chaired many cases that resulted in jury verdicts granting large awards, including the Hester v MDOC case.

The reality is, however, that other than the Griffey case, there are no other such examples. Mr. Marko cites two cases in his resume—Hester v MDOC and Jennings v Fuller. However, in neither case did Mr. Marko sit first chair. James Rasor, Mr. Marko's former employer, testified to his frustration over Mr. Marko's tendency to take credit for other people's achievements:

> Q (BY MR. BENDURE) But if we're looking at what a lawyer has to do at trial. You've had trials against the Department of Corrections, correct?
> A I have.
> Q And-
> A Both of which Marko wanted to take credit for, but which he was second chair for. Yes. Because, Mr. Bendure, I mean a fair reading of what Marko filed with the Court, you'd think he tried the Hester case, wouldn't you?
> Q I'm just asking you to answer questions.
> A And he didn't try the Hester case, did he, because I have the transcript that shows that I tried the Hester case. So while Mr. Marko would like to take credit for that, it's not the truth wouldn't you agree?
> Q I'm asking the questions. (Rasor dep. Tr., p 51)

With regard to the Jennings case, Mr. Potter, who was the post-trial defense attorney, testified that Mr. Marko had little to do with it. At the evidentiary hearing, Mr. Marko acknowledged that he had only first chaired ten cases. Further, he did not cite any of those as examples of cases where he achieved a large verdict.

Mr. Marko submitted several affidavits from prominent plaintiff attorneys (and the testimony of Glen Lenhoff) attesting to his positive attributes and their opinion that he merits a fee of $750 per hour. Although the Court has great respect for all of the attorneys, it agrees with Defendant that none of them provided any basis for their conclusion. Further, the Court also agrees that Mr. Marko has not yet established himself such that he belongs in their company. This takes nothing away from Mr. Marko; the others have established their reputations over thirty and forty years of practice. The Court agrees with Mr. Potter, that Mr. Marko does not yet have the "body of work" to justify the status that he claims for himself.

Defendant submitted evidence that some in the profession do not have a favorable impression of Mr. Marko. For instance, Mr. Rasor has a very poor opinion of Mr. Marko. There does seem to be a pattern of disputes between Mr. Marko and the firms/partnerships with which he associates.

The Court has had the opportunity to observe Mr. Marko's ability in the Griffey trial. The Court found him to be aggressive, thorough and consistent in adhering to a compelling narrative. However, the Court also noted that he was uneven in his some of the basics of trial practice, such

as foundational requirements for exhibits and expert testimony. Overall, he did a very good job on the case, as was reflected in the verdict.

Overall, this factor merits an upward adjustment.

*4. Conclusion regarding Mr. Marko's attorney fees*

For the above reasons, the *Smith v Khouri* three-part analysis yields the following:

The Court sets the reasonable rate for an employment plaintiff attorney within Genesee County to be $302 per hour.

The Court finds the reasonable number of hours expended to be 359.84.

The rate multiplied by the hours is $108,671.68.

Next, the Court must consider adjustments. There should be an upward adjustment for Mr. Marko's experience at litigating against Defendant. Further, with regard to his status generally, the Court finds Mr. Marko to be a young, aggressive and effective lawyer who has achieved success in his 11 year career. However, his bid to masquerade as an elite lawyer who has first-chaired multiple large jury verdicts was not well taken. Considering all of this, the Court finds it appropriate to manifest an upward adjustment by adopting the 75th percentile rate instead of averaging the 50th percentile and 75th percentile rates. This would set the rate at $337.

Multiplying the adjusted rate by the number of hours expended yields an attorney fee of $121,266.08.

C. Mr. Bendure's Attorney Fee

Fortunately, the *Smith v Khouri* analysis is much less extensive in the case of Mr. Bendure.

The Court agrees with Defendant that it is appropriate to refer to the 2017 Survey to set an amount commensurate with an appellate counsel at the 75th percentile, which yields an amount of $325 per hour.

With regard to hours expended, the Court intends only to compensate for the time made necessary by the refusal of case evaluation related to Mrs. Griffey's case. As such, as with Mr. Marko's fees, the Court will reduce the submitted hours by 40%. The Court finds Mr. Bendure's billings to be credible and will not discount them any further. Therefore, the Court finds that Mr. Bendure expended 31.32 hours.

The Court does not see any basis to make any adjustments. Therefore, Plaintiff is entitled to be compensated for Mr. Bendure's attorney fee in the amount of $10,179.

D. Costs

While the Court in its post-trial opinion only referred to attorney fees under ELCRA and did not deal with costs, this was an oversight and not an intention to defer the issue. In any event, the Court will make it clear now.

The Court has discretion under MCL 37.2802 to award "costs of litigation" "if the court determines that the award is appropriate." The verdict received in this case of approximately $11.4 million is more than adequate to pay for costs and still provide a very large recovery to the Plaintiffs. If the idea that at some point a verdict can be so large as to obviate the need to award costs and attorney fees exists in the law at all, it exists in this case. If not, the Court wonders how high the number would have to be to trigger it. $20 million? $50 million? For this reason, the Court does not find it appropriate to award costs. As such, the Court will only award costs as part of case evaluation sanctions.

Plaintiff is entitled to taxable costs pursuant to MCL 2.403(O)(6)(a). Plaintiff has the burden of establishing that such costs were expended. Plaintiff cited as authority the following statutes: MCL 600.2164, MCL 600.2405(1), MCL 600.2501 and MCL 600.2421b(1). Unfortunately, the Court must deal with the same dynamic that it did with regard to Mr. Marko's attorney fees—an effort to inflate the request beyond what is allowable.

For instance, although an expert may only be compensated for preparation time and while testifying, Plaintiff seeks recovery for waiting time for Barry Grant, Gerald Shiener and Wendell Harris. In his brief, Plaintiff takes the position, without citing authority, "appearing in Court due to the possibility that one may be called to testify would fall under preparation." The Court disagrees with the idea that sitting and waiting equates with preparation.

Plaintiff also seeks to recover fees for Steve Hnat. Plaintiff does not take the position that Mr. Hnat was ever going to serve as a witness, but was only retained to "consult." No authority is cited that would allow fees for this. This also applies to consultation time with attorneys for witnesses who did testify.

The Court does agree with Plaintiff that Dr. Rubenfaer did testify as an expert. As such, Plaintiff is entitled to recover for his fees.

The Court also agrees that Plaintiff has provided no authority for the proposition that trial supplies, lodging and incidental expenses are allowable. Also, many of the costs requested for court costs, deposition costs, courier fees, case evaluation and facilitation, etc. are not supported with authority.

Per the above, the Court awards costs as follows:

| | |
|---|---|
| Barry Grant | $19,140 |
| Gerald Shiener | $ 7,000 |
| Wendell Harris | $ 1,566.12 |
| Dr. Rubenfaer | $ 1,000 |
| Court fees | $ 2,589 |
| Total | $31,295.12 |

E. Conclusion

Based upon the above, the Court orders case evaluation sanctions as follows:

Mr. Marko's attorney fees in the amount of $121,266.08.

Mr. Bendure's attorney fees in the amount of $10,179.

Costs in the amount of $31,295.12.

IT IS SO ORDERED.

April 14, 2021

David J. Newblatt, P-45306
Circuit Court Judge