UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY SEVY,

     Plaintiff,

v.

PHILIP BARACH,

     Defendant.

Case No. 17-13789
Honorable Laurie J. Michelson

---

**OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR NEW TRIAL [111],
GRANTING IN PART PLAINTIFF'S MOTION FOR COSTS AND FEES
[112], AND GRANTING IN PART DEFENDANTS' MOTION
FOR COSTS AND FEES [113]**

---

In November 2017, Anthony Sevy sued court security officers Philip Barach and Harold Marshall under 42 U.S.C. § 1983 following an assault at the state courthouse in Royal Oak, Michigan. Three months later—and just a few days after the scheduling conference—Defendants made a $20,000 offer of judgment under Federal Rule of Civil Procedure 68. Sevy rejected it. After five years of litigation, including an interlocutory appeal to the Sixth Circuit, only a single claim against Barach survived for trial. And at trial, a jury found that Barach used excessive force against Sevy and awarded him $3,000. He had asked for $9.5 million.

Now before the Court are three post-trial motions: (1) Sevy's motion for a new trial on damages (ECF No. 111); (2) Sevy's motion for attorney's fees and costs (ECF No. 112); and (3) Barach and Marshall's motion for attorney's fees and costs (ECF No. 113). For the following reasons, the Court will DENY the motion for a new trial,

GRANT IN PART Sevy's motion for attorney's fees and costs, and GRANT IN PART Defendants' motion for attorney's fees and costs.

## I. Motion for New Trial

The jury awarded Sevy $3,000 in non-economic damages for his injuries up to the present, but it refused to award future non-economic damages or punitive damages. (ECF No. 110, PageID.2627.) Sevy says that this award "flies in the face of uncontroverted evidence presented at trial" and asks this Court to grant a new trial on "damages only." (ECF No. 111, PageID.2630.) The Court declines his invitation.

A district court may grant a new trial "on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). One reason for granting a new trial is that the damage award was insufficient. *Walker v. Bain*, 257 F.3d 660, 674 (6th Cir. 2001). But the "scope of review of a damage award is extremely narrow." *Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996). The remedy of a new trial for inadequate damages is appropriate "only where the evidence indicates that the jury awarded damages in an amount substantially less than unquestionably proved by the plaintiff's uncontradicted and undisputed evidence." *Walker v. Bain*, 257 F.3d at 674; *see also Heard v. Finco*, 930 F.3d 772, 774 (6th Cir. 2019). In other words, a jury's damages award "need only be supported by some competent, credible evidence." *Heard*, 930 F.3d at 775 (internal quotation marks omitted).

Sevy did not "unquestionably" show that he was entitled to a higher damage award. *See Heard*, 930 F.3d at 774. True, Sevy presented evidence of his damages through a video of the incident, photographs showing red marks on his neck and his soiled underwear, a medical record from an urgent care facility the day after the incident, as well as lay and expert testimony on the continuing impact of the incident on his life. (ECF No. 111, PageID.2642.) (The physical injuries depicted in the photographs were minor.) But there was other evidence before the jury. Following the incident, Sevy "got married, his business flourished, and he moved twice, each time to a nicer house." (ECF No. 114, PageID.3107.) And Sevy did not seek medical care besides the single visit to urgent care, and he never consistently sought psychiatric care despite his expert's recommendation that he do so. (*Id.*)

Because the evidence on damages is disputed and contradictory, the Court cannot second guess the jury's finding that Sevy's injuries were fairly compensated by an award of $3,000. In other words, relying on credible evidence, the jury concluded that Sevy was subjected to excessive force, but that he did not suffer severe or ongoing harm from it. *See also McDonald v. Petree*, 409 F.3d 724, 731 (6th Cir. 2005) (affirming denial of a motion for a new trial and noting that expert testimony is "not conclusive" and that "witness credibility is solely within the jury's province"). Moreover, Sevy is not entitled to punitive damages because "they are never awarded as of right, no matter how egregious the defendant's conduct." *King v. Zamiara*, 788 F.3d 207, 217 (6th Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 52 (1983)).

Neither of Sevy's arguments to the contrary persuade. First, Sevy suggests that the returned verdict was inconsistent. (*See* ECF No. 111, PageID.2639 (citing Fed. R. Civ. P. 49(b)(4)).) But he never explains why. The jury found that "Defendant used excessive force against Plaintiff," that "Plaintiff suffered damages," and that he suffered damages in the amount of $3,000 to the present, no damages in the future, and that he was not entitled to punitive damages. (*See* ECF No. 110.) Sevy may disagree with the jury's conclusion, but there is nothing inconsistent in its answers. Accordingly, Sevy's reliance on *Bell v. Johnson* is misplaced. *See* 404 F.3d 997, 1003–04 (6th Cir. 2005) (affirming the district court's grant of a new trial on damages because "the jury's answers to questions one through four of the verdict form were in conflict with its answer to question six").

Second, Sevy cites *Morris v. Eversley* for the proposition that a court can order a new trial on damages when the jury award "shocks the conscience." (ECF No. 111, PageID.2642 (citing 343 F. Supp. 2d 234 (S.D.N.Y. 2004)).) In *Morris*, a jury awarded an incarcerated woman $500 in compensatory damages and $7,500 in punitive damages after a correctional officer entered her cell and attempted to rape her in her sleep. 343 F. Supp. 2d at 237–38. Though Sevy did not provide the relevant opinion in *Morris*,[1] an order directing the parties to brief this issue suggests why this award shocked the conscience. *See Morris v. Eversley*, No. 00-8166, 2004 WL 171337 (S.D.N.Y. Jan. 29, 2004). The court suspected that the jury

---

[1] The opinion Sevy cited merely notes that the court had granted a new trial on damages on this basis in its procedural history. The order that actually granted a new trial on damages does not appear to be available on Pacer, Lexis, or Westlaw.

4

concluded that Morris consented to the sexual contact even though it had been instructed that "she was legally incapable of consenting," or that the jury may have given "undue weight to Morris's status as a convicted felon." *Id.* at *1. In contrast, Sevy makes no suggestion that the jury might have disregarded the jury instructions or been biased against him. Instead, he just makes a conclusory assertion that the "jury award . . . certainly shocks the conscience in light of all of the evidence presented in this case." (ECF No. 111, PageID.2642.) This is insufficient.

In sum, the Court finds that the jury award is supported by competent evidence and sees "no good reason to second-guess [it]." *See Heard*, 930 F.3d at 775.

## II. Cross-Motions for Costs and Fees

The parties also dispute the issue of attorney's costs and fees. The dispute centers on the interaction between the Civil Rights Attorney's Fees Awards Act of 1976, *see* 42 U.S.C. § 1988, and Federal Rule of Civil Procedure 68, which details the procedure and effect of an offer of judgment. To oversimplify a bit, § 1988 allows a prevailing civil rights plaintiff to recover his attorney's fees and costs from the defendant. But if the cost-shifting provision of Rule 68 applies, it forbids the plaintiff from recovering his post-offer-of-judgment costs and fees and imposes the defendant's post-offer costs on him.

Relying on § 1988, Sevy claims that he is entitled to $474,380.00 in fees and $28,075.68 in costs, totaling $502,455.68 plus prejudgment interest. (ECF No. 112,

PageID.2649.) Relying on both § 1988 and Rule 68, Defendants seek $14,543.40 in fees and $32,289.97 in costs, totaling $46,833.37. (ECF No. 113, PageID.2951.)

The Court must first determine each party's reasonable attorney's fees under § 1988. *See Hescott v. City of Saginaw*, 757 F.3d 518, 530 (6th Cir. 2014) (explaining the procedure for reconciling § 1988 and Rule 68). Then using those figures, the Court must determine whether Rule 68 applies and in what manner. *See id.*

## A. Section 1988

Section 1988 provides that when a party files suit under § 1983, as Sevy did here, "the [district] court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). As to a prevailing plaintiff, "the Supreme Court has read [§ 1988] as mandatory where the plaintiff prevails and special circumstances are absent." *Hescott*, 757 F.3d at 523. As to a prevailing defendant, "§ 1988 permits an award upon a finding by the district court that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Kidis v. Reid*, 976 F.3d 708, 721–22 (6th Cir. 2020) (cleaned up).

Both Sevy and Marshall seek fees under § 1988, and the Court will take each in turn.

### 1. Sevy

Barach does not dispute that Sevy prevailed against him at trial. (*See generally* ECF No. 116); *see also HLV, LLC v. Van Buren Cnty.*, 784 F. App'x 451,

453–54 (6th Cir. 2019) ("[W]hen a plaintiff wins more than mere nominal damages, a district court will often abuse its discretion by refusing to award attorney's fees.").

A reasonable attorney's fee award is one that is "adequate to attract competent counsel" but does not "produce windfalls to attorneys." *Blum v. Stenson*, 465 U.S. 886, 893–94 (1984). In calculating a reasonable fee, "district courts are not required to act as 'green-eyeshade accountants' and 'achieve auditing perfection' but instead must simply to do 'rough justice.'" *The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 703 (6th Cir. 2016) (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)). In other words, the Court may rely on estimates based upon its "overall sense of a suit." *Id.*

Determining a reasonable fee begins with calculating the product of a "reasonable hourly rate" and the "number of hours reasonably expended on the litigation," known as the "lodestar" amount. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 372 (6th Cir. 2015). The court is then to "consider adjusting the fee based on a number of factors, the most important of which 'is the degree of success obtained.'" *Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 575 (6th Cir. 2019) (quoting *Hensley*, 461 U.S. at 436). So the Court begins by calculating the lodestar.

*Reasonable hourly rate.* "A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 821 (6th Cir. 2013). A useful guideline for determining a reasonable hourly rate is the "prevailing market rate . . . in the relevant

7

community." *Blum*, 465 U.S. at 895. "The accepted benchmark for determining reasonable hourly rates in this district is the State Bar of Michigan's most recent Economics of Law Practice Survey." *Plastic Omnium Auto Inergy Indus. SA de CV v. MCC Dev., Inc.*, No. 21-CV-11141, 2022 WL 992979, at *1 (E.D. Mich. Mar. 31, 2022); *see also* State Bar of Michigan, Economics of Law Practice Survey (2020), https://perma.cc/D55N-R6ZU.

Relying on the 95th percentile figures from the 2020 Economics of Law Practice Survey (ELPS) and a few state-court opinions providing for fees, Sevy requests $950 per hour for his primary attorney, Jonathan Marko, $350 per hour for the other attorneys who worked on his case, and $150 per hour for the paralegal. (ECF No. 112, PageID.2666–2669, 2677.) Relying on the median and mean figures from the ELPS and different state-court opinions providing for fees, Barach suggests that $328 per hour is appropriate for Marko, that $241.50 per hour is appropriate for the other attorneys, and that $120 per hour is appropriate for the paralegal. (ECF No. 116, PageID.3288–3289.)

The Court will consider each member of Sevy's legal team in turn.

Start with Marko, the lead attorney. As is often the case, the point of reasonableness seems to lie somewhere between the parties' extremes. After reviewing the parties' submissions, the 2020 ELPS, awards in analogous cases for Marko and like attorneys, and relying on its own knowledge and experience, the Court finds that $500 per hour is an appropriate figure for Marko. Marko heads a small firm with an office in downtown Detroit, has practiced for 14 years, and has

experience with civil rights cases like this one. (*See* ECF No. 112-1, PageID.2828–2830.) Though the 95th percentile billing rate for civil rights lawyers in Downtown Detroit is $950, other relevant categories suggest a much lower rate. (*See, e.g.*, State Bar of Michigan, Economics of Law Practice Survey (2020), https://perma.cc/D55N-R6ZU at p.8 (noting that rate for lawyers in the 95th percentile of those with 11 to 15 years of experience is only $475 per hour).)

And the Court is not persuaded that Marko performed at the 95th percentile in this case. To be sure, two state courts have concluded that Marko is in the 95th percentile and have provided accordingly high rates. (*See* ECF No. 112-1, PageID.2899, 2901, 2911.) But another state court found a lower percentile and corresponding rate more appropriate. As Barach points out, in *Griffey v. Michigan Department of Corrections*, Marko's client won an $11 million jury verdict. (ECF No. 112-1, PageID.2837 (citing No. 17-108535 (Mich. 7th Cir. filed 2017)).) Despite that success, the judge adjusted his requested rate of $750 per hour down to $302 per hour, concluding that he fell between the median and 75th percentile of lawyers. (ECF No. 116-8, PageID.3326, 3328–3330 (opinion filed in April 2021).) Considering these opinions' ranges and the relevant categories in the 2020 ELPS (particularly his field of practice and location), the Court finds that Marko performed similar to attorneys at the 75th percentile and that his reasonable hourly rate is $500 per hour.

The parties' ranges are closer with respect to the other members of Sevy's legal team. Compared to Marko, though, relatively little information is provided for

the four other attorneys who worked on this case. Indeed, Sevy provides no information about Ali Charara or Stephen Lovell. (*See generally* ECF Nos. 112, 119.) So the Court will assume that they were as similarly qualified as the two attorneys whose information Sevy did provide. Tyler Joseph had been practicing law for three years when he billed for this case, but apparently had no experience with civil rights cases. (ECF No. 112, PageID.2668.) Charles Kersten has been practicing law for one year, and also appears to have no prior experience with civil rights cases. (*Id.* at PageID.2668–2669.) Considering the relevant ELPS median rates for these two attorneys, the Court finds that their reasonable hourly rate is $245 per hour.

Finally, as to Marko Law's paralegal, Melinda Morisset, Sevy proposes $150 per hour as a reasonable rate and Barach proposes $120 per hour. The Court finds that her reasonable hourly rate is $140 per hour, as she has over 30 years of experience and was apparently instrumental in preparing for trial. (ECF No. 112, PageID.2677.)

To reiterate, Marko's reasonable rate is $500 per hour, the other attorneys' reasonable rate is $245 per hour, and the paralegal's reasonable rate is $140 per hour. And the Court notes that these figures apply the higher rates from the 2020 ELPS, though much of this case occurred while the 2017 ELPS was in effect. *See Barnes v. City of Cincinnati*, 401 F.3d 729, 745 (6th Cir. 2005) (noting that a district court has discretion to award current market rates, rather than historical market

rates, when a case has been ongoing for several years and plaintiff's counsel accordingly experienced a delay in compensation).

*Hours reasonably expended.* The hours reasonably expended is a significantly more difficult determination in this case. "The award-seeking party should submit evidence of the hours worked[.]" *The Northeast Ohio Coalition for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The court may also exclude hours that were not "reasonably expended on the litigation." *Id.* "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.* at 434.

Sevy submitted billing records suggesting that about 673 hours were spent on the case. (*See* ECF No. 117.) Barach vigorously contests this figure, going so far as to suggest that the records are unethical and fraudulent. (ECF No. 116, PageID.3289–3300.) Accordingly, Barach urges the Court to apply a significant percentage reduction to the hours billed. (*Id.*)

There certainly were shortcomings with the submission of Sevy's billing records. Counsel's first attempt at submitting billing records did not comply with this District's Electronic Filing Policy. *See* E.D. Mich. Elec. Filing Pol'y and Proc. R. 19(b)(3) (requiring that each exhibit be "filed and identified as a separate attachment"). But—more significantly—the records were inscrutable. (ECF No. 112-

1, PageID.2685–2752 (separating the data for each time entry onto separate pages with no clear way to reconcile it, making it difficult to evaluate which tasks were conducted on which day, by which timekeeper, and at what rate).) The second attempt fared better. (*See* ECF No. 117.) But Sevy still failed to identify the total number of hours billed per timekeeper and offered no explanation of how the $474,380.00 figure was reached. (*See* ECF Nos. 112, 119, 120.) This failure forced the Court to create the following pivot table based on the billing records:

| Hours Submitted by Sevy | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Hours** | **Ali Charara** | **Charles Kersten** | **Jonathan Marko** | **Melinda Morisset** | **Stephen Lovell** | **Tyler Joseph** | **Total** |
| **2017** | | | 49.1 | | | 20.6 | 69.7 |
| **2018** | 4.9 | | 54.7 | | 2.7 | 76.1 | 138.4 |
| **2019** | 16.9 | | 17.5 | | | | 34.4 |
| **2020** | | | 72.8 | | | | 72.8 |
| **2021** | | | 4.6 | 1.4 | | | 6 |
| **2022** | | 102.2 | 212.7 | 37 | | | 351.9 |
| **Total** | **21.8** | **102.2** | **411.4** | **38.4** | **2.7** | **96.7** | **673.2** |

Beyond these shortcomings, Barach raises a number of concerns about the billing records. He identifies five areas of dispute: (1) administrative time; (2) time that is not compensable under § 1988; (3) excessive and duplicative time; (4) entries that lack sufficient detail; and (5) entries that are fraudulent. (ECF No. 116, PageID.3289.) Besides the first, the Court agrees that these categories are concerning.

Barach suggests that Marko Law improperly billed for clerical time at attorney or paralegal rates. "[P]urely clerical or secretarial tasks should not be billed at a paralegal rate." *Williams v. Com. of Ky.*, 124 F.3d 201 (6th Cir. 1997) (table decision). The Court understands Barach's concern but does not find these entries objectionable. For example, Marko billed for "updating [his] calendar" and Joseph billed for "drafting *and serving*" the complaint. (ECF No. 116, PageID.3293.) But Joseph did not actually serve the complaint, so he was likely just coordinating with the process server. And it may be more efficient for Marko to update his own calendar at times. The Court does not believe this is a valid basis for a reduction in hours.

Barach next argues that Marko Law billed time that was not reasonably expended "on the litigation." *See Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 235 (1985); *Cox v. Shelby State Cmty. Coll.*, 194 F. App'x 267, 278 (6th Cir. 2006). Several entries reflect work that was not expended on the litigation, including "discuss[ing] potential for media coverage," "drafting a press release," holding a "press conference with WJBK Fox2," and "[r]eview[ing] online feedback from press conference." *See H.D.V.-Greektown, LLC v. City of Detroit*, 660 F. App'x 375, 386 (6th Cir. 2016) ("Fees incurred for such activity [as meeting with reporters and reviewing articles and television reports] do not comport with § 1988's purpose to support civil rights litigation."). Thus, these fees are not compensable.

The Court will consider the final three concerns—that many entries are excessive and duplicative, that they lack sufficient detail, and that they are

fraudulent—at once. "The documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Local 307 v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 503 (6th Cir. 1984) (cited by *Perry v. AutoZone Stores, Inc.*, 624 F. App'x 370, 373 (6th Cir. 2015)). And hours that are "excessive, redundant, or otherwise unnecessary" are not reasonably expended. *Hensley*, 461 U.S. at 430.

Most troubling is Marko Law's failure to keep contemporaneous billing records, which it concedes. (ECF No. 119, PageID.3461.) It is hard to fathom how these records could have been reliably reconstructed given that this case is nearly five years old. And to make matters worse, no one from Marko Law explained how this reconstruction was accomplished. Indeed, the only support for the billing records are two affidavits from Marko and Morisset. (ECF No. 112-1, PageID.2683, 2927; ECF No. 120, PageID.3501.) But Marko's affidavit only says that he "reviewed the accompanying fee petition and [that] it is accurate and correct to the best of [his] knowledge." (ECF No. 112-1, PageID.2683.) For her part, Morisset only attested to the accuracy of her own time—which really only covered 2022. (*Id.* at PageID.2927.) In addition, as Barach notes, some of the attorneys who "billed" their time on this case apparently no longer work at Marko Law. (ECF No. 116, PageID.3278); *see also* Marko Law, "Our Team," https://perma.cc/HLY4-2UK7 (last visited Sept. 2, 2022) (listing staff and not including Ali Charara, Stephen Lovell, or

14

Tyler Joseph). So there appears to be no support whatsoever for these timekeepers' records. These considerations leave the Court wondering how the entries were reconstructed and how accurate such a reconstruction could be.

The failure to keep contemporaneous records at any point in this case is exacerbated by the fact that, almost 18 months ago, another judge rebuked Marko Law for this exact failure and reduced its requested hours by 30 percent, which the court believed was "generous." (ECF No. 116-8, PageID.3326–3327 ("Mr. Marko testified that he did not keep contemporaneous records. Rather, he assembled the spreadsheet after the fact using block billing. Mr. Marko's failure to document his time . . . is an immense hurdle to credibly proving the number of hours expended. This is his fault and no one else's. From the beginning of the case, he knew that he would be asking for attorney fees[.]").) This put Marko Law on notice of the risk of failing to keep contemporaneous records. This risk is even further exacerbated in a case like this where there is a very early Rule 68 offer of judgment. As will be discussed, maintaining reliable records is of paramount importance in determining whether the judgment the plaintiff receives, which includes pre-offer attorney fees, is more favorable than the offer.

The two cases that Sevy cites to argue that it is "sufficient" that his attorney "attest[ed] that [he] reviewed the fee petition and confirmed its accuracy" in fact cut against Sevy's argument. (ECF No. 119, PageID.3461.)

Take *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545 (9th Cir. 1989) first. There, the Ninth Circuit said that "[t]he lack of contemporaneous

records does not justify an automatic reduction in the hours claimed, but such hours should be credited only if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation." *Id.* at 1557. But Sevy did not "support[ the hours with] other evidence" besides the affidavits that contain no specific details about the time billed. And *Frank Music* cited an Eleventh Circuit case showing why the affidavits are inadequate. That court found an automatic reduction unwarranted after a lawyer testified that she reconstructed her hours based on her "diary entries and work product." *See Johnson v. Univ. Coll. of Univ. of Alabama in Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983). In a similar vein, the Sixth Circuit approved the provision of fees where counsel "provided the magistrate judge with computerized calendars and computerized file information which indicated the dates and times of work performed." *See Sigley v. Kuhn*, 205 F.3d 1341 (6th Cir. 2000). In contrast, neither Marko's nor Morisset's affidavit provided any information about how the records were reconstructed. (ECF No. 112-1, PageID.2683.)

The other case Sevy cites, *Securities & Exchange Commission v. Sethi Petroleum LLC,* is easily distinguishable because the lawyers at Marko Law are in private practice in a fee-generating capacity, and not "[g]overnment attorneys [who] are not normally expected to record their hours." *See* No. 4:15-CV-00338, 2017 WL 262071, at *2 (E.D. Tex. Jan. 19, 2017).

Accordingly, the Court finds that a significant reduction is appropriate for Marko Law's failure to keep contemporaneous records and to properly support the

reconstructed records submitted. *See Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) ("Courts in this circuit have reduced attorney fees . . . where the attorney did not maintain contemporaneous records of his time or the nature of his work[.]" (internal quotation marks omitted)).

In addition to being non-contemporaneous, many entries are block billed. Again, Sevy acknowledges as much. (*See* ECF No. 119, PageID.3462.) Block billing makes it difficult to understand how much time was spent on each task, and thus whether the time spent was reasonable. *See Bell v. Prefix, Inc.*, 784 F. Supp. 2d 778, 787 (E.D. Mich. 2011) ("In the Sixth Circuit, the law is clear that significant reductions in time are appropriate where block billing is used."); *Howe v. City of Akron*, No. 5:06-CV-2779, 2016 WL 916701, at *12 (N.D. Ohio Mar. 10, 2016) ("Attorneys who engage in block billing do so at their own risk."). To take just one example, on November 22, 2017, Marko billed for the following activities:

> Discuss potential for media coverage and to uncover additional witnesses not listed in the police report. Drafted press release regarding the newly filed complaint and send to press contacts. Strategize on how to find civilian witnesses, statements not taken. Discuss that press could help obtain unknown witness and/or other 404b type evidence. Also, discuss lack of use-of force statement in police files. Attempt to find Royal Oak use of force policies online, but could not find. Look at other case files for RO use of force. Research whether district court officer must follow RO police use of force.

Such block billing makes it impossible to evaluate how much time is compensable under § 1988 (attempting to find witnesses) and how much time is not compensable under § 1988 (discussing media coverage and writing a press release).

And the Court agrees with Barach that some entries are of questionable accuracy. Barach points to one entry from March 4, 2019, stating that Charara

17

attended a three-hour facilitation. But both of Barach's lawyers submitted affidavits stating that a different attorney attended that facilitation. (*See* ECF No. 116-6, PageID.3319; ECF No. 116-7, PageID.3322.) Sevy did not dispute this discrepancy in his reply. (*See generally* ECF No. 119.) Barach also notes that Sevy billed for pre-suit research on and a retainer for Kenneth Glaza, a forensic video expert. (ECF No. 116, PageID.3299.) But Sevy failed to provide any documentation for the dates those costs and fees were incurred, and he failed to disclose Glaza on his witness list in 2018, suggesting he was perhaps not retained until later. (*See* ECF No. 20 (witness list); *cf.* ECF No. 50-7, PageID.1299 (Dr. Shiener's expert report noting that Sevy was examined in Nov. 2017).) These issues heighten the Court's concerns with the reconstructed records.

And many entries appear bloated. For example, by this Court's calculation, Marko Law billed over 20 hours for researching and over eight hours for drafting a basic, nine-page complaint with garden-variety constitutional claims. (*See* ECF No. 116, PageID.3294; ECF No. 1.) And of those nine pages, about two contain case-specific factual allegations. (*See* ECF No. 1.) In addition, almost every entry that billed for four hours or more—about 50 entries total—is rounded to the nearest half-hour, rather than the standard tenth-of-an-hour. *See Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 849 (6th Cir. 2013) (holding that a court has discretion to discount for the use of quarter-hour billing increments due to the potential for over-billing).

18

Considering the fact that Marko Law did not keep contemporaneous records or provide adequate evidence to support its reconstructed records, that it used block billing, and that many entries were excessive and possibly inaccurate, the Court will apply a 35 percent reduction to the hours submitted by Sevy. *See Hubbell v. FedEx SmartPost, Inc.*, 933 F.3d 558, 576 (6th Cir. 2019) ("Although the reduction was substantial, we cannot say that the court exceeded the scope of its authority in reducing the number of billed hours by 35 percent due to the lack of specificity and duplication in the attorneys' billing records."); *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Loc. 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984) ("Where the documentation is inadequate, or recently compiled retrospective estimations of time expended, the district court would do violence to its judicial obligations were it to accept the amounts claimed at their value.").

Accordingly, the Courts finds the following hours appropriate for each timekeeper:

| Hours Awarded by the Court | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Ali Charara | Charles Kersten | Jonathan Marko | Melinda Morisset | Stephen Lovell | Tyler Joseph | Grand Total |
| **Submitted Hours** | 21.8 | 102.2 | 411.4 | 38.4 | 2.7 | 96.7 | 673.2 |
| **Reduction** | 35% | 35% | 35% | 35% | 35% | 35% | 35% |
| **Reduced Hours** | **14.2** | **66.4** | **267.4** | **25.0** | **1.8** | **62.9** | **437.6** |

Taking all of this together, the Court calculates the lodestar as follows:

19

| Lodestar | | | | | | | |
|---|---|---|---|---|---|---|---|
| | Ali Charara | Charles Kersten | Jonathan Marko | Melinda Morisset | Stephen Lovell | Tyler Joseph | Grand Total |
| **Rate** | $245 | $245 | $500 | $140 | $245 | $245 | |
| **Reduced Hours** | 14.2 | 66.4 | 267.4 | 25 | 1.8 | 62.9 | |
| **Total** | **$3,479** | **$16,268** | **$133,700** | **$3,500** | **$441** | **$15,410.50** | **$172,798.50** |

If that were the end of the story, Sevy would be entitled to $172,798.50 in fees according to the lodestar. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

*Reductions to the lodestar.* But that is not the end of the story. It is "well established that after determining the basic lodestar, the degree of success obtained is the most important factor in determining the reasonableness of a fee award." *See Kentucky Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 420–21 (6th Cir. 2004) (quoting *Hensley,* 461 U.S. at 434–36). "If . . . a plaintiff has achieved only partial or limited success, the . . . [lodestar] may be an excessive amount." *See Hensley*, 461 U.S. at 436. When assessing the reasonableness of fees for a plaintiff like Sevy who has been only partially successful, the Court considers two issues: "(1) whether the claims on which the plaintiff failed to prevail were or were not related to the claims on which he or she succeeded, and (2) whether the plaintiff achieved a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees." *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008).

Using this logic, Barach urges the Court to impose a nearly 100 percent reduction in fees. (ECF No. 116, PageID.3280.) He argues that Sevy was only successful on one out of six claims and that he was only awarded $3,000 despite making a $9.5 million request for damages. Accordingly, says Barach, Sevy only achieved about a 0.03 percent success, and that his award should be reduced accordingly. (*See id.* at PageID.3302.)

The Court is not persuaded by Barach's approach. The Sixth Circuit has repeatedly directed that a Court "should not measure a plaintiff's success simply by using a ratio of successful claims to claims raised." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822–23 (6th Cir. 2013). In any case, the Court would find such a reduction punitive and contrary to the purposes of § 1988. *See Hescott v. City of Saginaw*, 757 F.3d 518, 523 (6th Cir. 2014) ("Congress enacted 42 U.S.C. § 1988 to encourage the private enforcement of civil rights.").

But that is not to say that a significant reduction is not appropriate. Sevy prevailed on his Fourth Amendment excessive force claim against Barach; his Fourth Amendment excessive force claim against Marshall failed, his First Amendment retaliation claims against both Defendants failed, and his unlawful-arrest claims against both Defendants were abandoned at summary judgment. (*See* ECF Nos. 1, 55, 65, 110.)

The first question is whether the successful claim is related to the unsuccessful claims. Claims are related where they arise out of a "common core of facts or are based on related legal theories." *Dowling v. Litton Loan Servicing LP*,

21

320 F. App'x 442, 448 (6th Cir. 2009). "If an unsuccessful claim is sufficiently distinct from the claim on which a plaintiff is successful, then the plaintiff is not entitled to fees for work on the unsuccessful claim." *Id.* Here, "a number of claims . . . constellate[d] around a single nucleus of facts . . . [and so they] 'cannot be viewed as a series of discrete claims." *See Hescott v. City of Saginaw*, No. 10-CV-13713, 2015 WL 13589671, at *7 (E.D. Mich. June 19, 2015) (on remand) (citing *Hensley*, 461 U.S. at 435). Accordingly, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* So the Court proceeds to the second question.

The second question is "whether the plaintiff achieved a sufficient degree of success to render the hours reasonably expended a satisfactory basis for awarding attorney fees." *Imwalle*, 515 F.3d at 552. And the Sixth Circuit has directed that "the amount of damages awarded as compared to the amount sought in a damages claim is one way to think about the degree of success." *McKelvey v. Sec'y of U.S. Army*, 768 F.3d 491, 495 (6th Cir. 2014) (internal quotation marks omitted) (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Further, "[f]ew, if any, reasonable litigants would call a monetary judgment that comes in well under the money offered to settle the case a success." *Id.*; *see also Hines v. City of Columbus, Ohio*, 676 F. App'x 546, 556 (6th Cir. 2017) ("Considering a rejected settlement offer is one way of measuring the degree of success.").

So what was Sevy's level of success? On one hand, Sevy succeeded in "remedying a civil rights violation" and "serv[ed] as a private attorney general, vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 833 (2011). On the other, Sevy's attorneys claim to have spent 673 hours on the litigation and Sevy demanded $9.5 million from the jury, but he only received $3,000 on one claim. And Sevy rejected several far more favorable offers during the course of this litigation. (*See, e.g.*, ECF No. 14 (sealed offer of judgment for $20,000)); *see also McKelvey*, 768 F.3d at 495. Sevy himself suggests that the damage award is so low as to shock the conscience.

The Court finds this to be a very modest success. *See Hescott v. City of Saginaw*, No. 10-CV-13713, 2015 WL 13589671, at *7 (E.D. Mich. June 19, 2015) (on remand) (where plaintiff sought $290,000 from jury and secured a verdict of $5,000, the court found it "difficult to categorize Plaintiffs' success as anything other than de minimus.") Accordingly, the Court will reduce the lodestar by 50 percent. *See Hines*, 676 F. App'x at 556 (affirming reduction of lodestar by 50 percent for degree of success obtained when plaintiff brought claims for excessive force, failure to intervene, and conspiracy, but the jury found for him on only one claim of excessive force against only one of the officers and awarded $30,000 following a demand for $5 million); *see also Hescott*, 2015 WL 13589671, at *9 (reducing lodestar by 80 percent for degree of success obtained after jury awarded plaintiff $5,000 following a demand for nearly $300,000 and a $15,000 offer of judgment).

Accordingly, without consideration of Rule 68, the Court would award Sevy $86,399.25 in attorney's fees. (Lodestar: $172,798.50 x 0.5 = $86,399.25.)

Sevy also seeks prejudgment interest. "[T]he general rule in the Sixth Circuit is that, in the absence of a statutory provision to the contrary, the award of prejudgment interest is a matter addressed to the discretion of the court." *Watkins v. Cnty. of Genesee*, No. 13-13678, 2018 WL 4005781, at *4 (E.D. Mich. Aug. 22, 2018) (citing *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir. 1984)); *see also Cont. Design Grp., Inc. v. Wayne State Univ.*, No. 2:10-CV-14702, 2014 WL 12661304, at *1 (E.D. Mich. Aug. 15, 2014) ("For federal claims, pre-judgment interest is discretionary."). Here, the Court finds that prejudgment interest is not necessary to compensate Sevy for his constitutional injury. The jury found that Sevy was made whole with an award of $3,000, and the Court already awarded the 2020 ELPS hourly rates rather than the 2017 ELPS rates in recognition of the delay in plaintiff's counsel's compensation over the last five years. So the Court finds that prejudgment interest is not necessary.

Finally, Sevy's motion seeks $28,075.68 in costs. (*See* ECF No. 112, PageID.2649; ECF No. 112-1, PageID.2754.) But it appears from the docket that the Clerk of the Court has not yet taxed costs. *See* E.D. Mich. LR 54.1. As this District's Bill of Costs Handbook provides, "After the taxation clerk has taxed costs, counsel for either side may, within seven days, file a motion to review the action of the taxation clerk and request review by the Court." *See* United States District Court for the Eastern District of Michigan, *Bill of Costs Handbook* (2013),

24

https://perma.cc/XD35-PP5Y. Thus, the Court will not consider this issue at this time.

In conclusion, without considering the effect of Rule 68, the Court would award Sevy $86,399.25 in attorney's fees and no prejudgment interest.

### 2. Marshall

While conceding that Sevy is the prevailing party as to Barach, Defendants contend that Marshall—who was dismissed at summary judgment—is the prevailing party over Sevy. (ECF No. 113, PageID.2948–2951.) Accordingly, say Defendants, Marshall is entitled to attorney's fees under § 1988.

The Court declines to award Marshall fees. As explained, a prevailing defendant may only recover attorney's fees from the plaintiff if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Bowman v. City of Olmsted Falls*, 802 F. App'x 971, 974 (6th Cir. 2020) (citing *Hughes v. Rowe*, 449 U.S. 5, 14 (1980)). "The plaintiff's action must be meritless in the sense that it is groundless or without foundation." *Id.* To be sure, "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." *Jones v. Continental Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986).

Defendants raise two arguments that Marshall should be awarded fees: (1) that the allegations against Marshall were "frivolous, unreasonable, groundless, and vexatious," and (2) that there were "never grounds to allege that Marshall falsely arrested" Sevy. (ECF No. 113, PageID.2948–2951.) True, this Court

dismissed Marshall at summary judgment. (*See* ECF No. 55, PageID.1338–1344.) But the Court only did so after a full recounting of the facts, an in-depth review of the videos, and a detailed analysis of the constitutional claims. To say that the claims against Marshall were so frivolous or groundless as to make this an exceptional case invites this Court to engage in the forbidden "'post hoc reasoning' and the 'hindsight logic' of concluding a suit is without foundation because the plaintiff ultimately does not prevail." *See Green v. City of Southfield, Michigan*, 764 F. App'x 548, 549 (6th Cir. 2019) (quoting *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985)).

Accordingly, the Court declines to award Marshall fees under § 1988.

## B. Rule 68

Having determined the issue of attorney's fees, the Court next turns to Federal Rule of Civil Procedure 68. As an initial matter, the Court notes that Marshall (as a prevailing defendant) is not relevant to the Rule 68 analysis. *See Delta Air Lines, Inc. v. Aug.*, 450 U.S. 346, 352 (1981) ("[I]t is clear that [Rule 68] applies only to offers made by the defendant and only to judgments obtained by the plaintiff. It therefore is simply inapplicable . . . [when] the defendant . . . obtained the judgment.").

On February 5, 2018—less than three months after this case was filed—Defendants made an offer of judgment under Rule 68 in the amount of $20,000 "inclusive of interest, costs, and attorneys fees." (*See* ECF No. 14, PageID.62 (sealed).) As explained, Rule 68(d) directs that "[i]f the judgment that the offeree

finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." To put it plainly, if the post-trial judgment is worth less than the Rule 68 offer Sevy rejected, then Rule 68(d) applies. If Rule 68(d) applies, "[Sevy] must bear [his] own post-offer costs and fees, as well as [Barach's] post-offer costs." *See Hescott v. City of Saginaw*, 757 F.3d 518, 530 (6th Cir. 2014). If Rule 68(d) does not apply, "then [Sevy is] entitled to the full measure of [his] pre- and post-offer costs and attorneys' fees." *See id.*

### 1. Applicability of Rule 68(d)

So the question for the Court to resolve is whether the "judgment . . . finally obtain[ed]" by Sevy was more or less favorable than the offer of judgment. *See Doe v. Rutherford Cnty., Tenn., Bd. of Educ.*, 86 F. Supp. 3d 831, 846 (M.D. Tenn. 2015) (explaining post-*Hescott* procedure). The parties agree the offer of judgment is worth $20,000. (ECF No. 113, PageID.2936; ECF No. 115, PageID.3144.)

So what is the value of the judgment? The judgment includes "not just the damages award, but also the claimant's pre-offer costs and fees actually awarded." *Hescott*, 757 F.3d at 527 (citing *Marek v. Chesny*, 473 U.S. 1, 7 (1985)). As explained above, the damage award was $3,000. And the Court will assume that Sevy is entitled to the full $2,785.53 in costs he claims as of the date of the offer of judgment. (*See* ECF No. 112-1, PageID.2754; *but see* ECF No. 115, PageID.3144 (Sevy calculating only $2,582.11 in costs to Feb. 5, 2018).) That totals $5,785.53.

That leaves the pre-offer attorney's "fees actually awarded." *Hescott*, 757 F.3d at 527. Sevy apparently assumes that the Court will accept the fees as requested.

27

(*See* ECF No. 115, PageID.3144 ("By February 5, 2017, Plaintiff had already amassed $64,100.00 in attorney's fees.").) But Defendants urge the Court to reduce the pre-offer fees. (*See* ECF No. 120, PageID.3501–3505.) Defendants have the better argument.

*Hescott* clearly explained the procedure the Court should follow to determine if Rule 68 applies: "On remand, the district court should first calculate the Hescotts' reasonable attorneys' fees. Then, the court should compare the Hescotts' jury award and pre-offer costs and fees to the City's settlement offer to determine if Rule 68 applies." 757 F.3d at 530. And the Sixth Circuit instructed that "pre-offer fees" means the "fees actually awarded." *Id.* at 527. For that proposition, *Hescott* cited a First Circuit case that used almost identical language. *See Bogan v. City of Bos.*, 489 F.3d 417, 431 (1st Cir. 2007) ("The 'judgment finally obtained' under Rule 68 includes the damage award plus pre-offer fees and costs actually awarded."). In that case, the First Circuit squarely rejected Sevy's argument, reasoning that plaintiffs' "argument for crediting their request for pre-offer fees and costs, instead of the amount actually awarded by the court, is illogical. If this were the rule, a prevailing party could always evade the Rule 68 bar simply by asking for a sufficiently large fee award so that the judgment finally obtained exceeds the offer." *Id.*; *accord Doe*, 86 F. Supp. 3d at 847. The Court agrees.

Here, the "fees actually awarded" were calculated above. Using those numbers, the Court calculates Sevy's pre-offer fees actually awarded as follows:

28

| Fees Incurred by Date of Offer of Judgment | | | |
|---|---|---|---|
| | **Jonathan Marko** | **Tyler Joseph** | **Total** |
| **Submitted hours** | 49.1 | 20.6 | 69.7 |
| **Reduction** | 35% | 35% | |
| **Reduced Hours** | 32 | 13.4 | 45.4 |
| **Rate** | $500 | $245 | |
| **Lodestar** | $16,000 | $3,283 | $19,283 |
| **Reduction to Lodestar** | 50% | 50% | |
| **Total** | **$8,000** | **$1,641.50** | **$9,641.50** |

So the judgment finally obtained is $15,427.03. ($3,000 judgment + $2,785.53 in pre-offer costs + $9,641.50 in pre-offer fees = $15,427.03.)

And the Court finds that its reductions to the fees actually awarded apply with equal force to the pre-offer fees. For one, this period is the most remote in time, making the reconstruction most difficult. And, as explained, Joseph no longer works at Marko Law, so it is not at all clear how his billing records were reconstructed. Adding to these credibility issues, Marko Law billed an unusually high number of hours: Marko billed almost 50 hours and Joseph "billed" over 20. But all that had been materially accomplished in that time was pre-suit investigation, coordinating

with two experts,[2] filing the complaint and the discovery plan, and attending the scheduling conference. (*See* ECF No. 117.) During the same period, defense counsel contemporaneously billed only 24.5 hours. (ECF No. 120-1, PageID.3509 (affidavit noting that during this time, defense counsel drafted the answer and the offer of judgment in addition to "conducting multiple interviews with at least six different court employees, reviewing the videos, reviewing case law, preparing a multiple page report to [her] client about the underlying incident, and communicating with Mr. Marko's team.").) And the Court finds it anomalous that Marko, as the partner, billed more than twice as many hours as his associate during this period.

Moreover, accounting for the degree of success in the "fee actually awarded" is both required by the Sixth Circuit and in accord with the purposes of Rule 68. *See Marek v. Chesny*, 473 U.S. 1, 5 (1985) ("The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits."); *Hines v. City of Columbus, Ohio*, 676 F. App'x 546, 556 (6th Cir. 2017) ("[A] trial court abuses its discretion when it does not consider the relationship between the fee awarded and the success obtained."). Indeed, at least two courts in the Sixth Circuit have reduced the pre-offer-of-judgment attorney's fees award to account for the degree of success obtained. *See Doe v. Rutherford Cnty., Tenn., Bd. of Educ.*, 86 F. Supp. 3d 831, 850 (M.D. Tenn. 2015) ("[T]he court finds that a 'reasonable' fee in this case is a partial

---

[2] And as explained, there is no evidence to support—and some evidence to doubt—that Glaza was actually retained in the pre-offer period. (*See* ECF No. 20 (July 2018 witness list not referencing Glaza).)

pre-offer attorney's fee award . . . that is discounted for the limited results obtained. . . . Relative to the pre-offer fees, the court will reduce the requested fee award by two-thirds."); *Hescott v. City of Saginaw*, No. 10-CV-13713, 2015 WL 13589671, at *10 (E.D. Mich. June 19, 2015) (on remand) (reading the Sixth Circuit's instructions on remand to require that, "[a]fter the appropriate reduction has been made [to the fees actually awarded], the adjustment figure must be applied to Plaintiffs' pre-offer fees" and then reducing the pre-offer fees by 80 percent to account for the degree of success obtained). Accordingly, the Court sees no reason to reconsider the "pre-offer . . . fees [it] actually awarded." *See Hescott*, 757 F.3d at 527.

Unfortunately for Sevy, the judgment finally obtained ($15,427.03) is not more favorable than the offer of judgment ($20,000). So Rule 68(d) applies.

## 2. Effect of Rule 68(d)

Because Rule 68(d) applies, Sevy "must pay the costs incurred after the offer was made." *See* Fed. R. Civ. P. 68. Here, that means that Sevy "must bear [his] own post-offer costs and fees, as well as [Barach's] post-offer costs." *See Hescott v. City of Saginaw*, 757 F.3d 518, 530 (6th Cir. 2014). Like Sevy, Barach has yet to file a bill of costs with the clerk, so the Court cannot conduct a full accounting at this time. *See* E.D. Mich. LR 54.1.

The "[o]peration of Rule 68 is mandatory, and the district court retains no discretion under Rule 68 to alter the rule's sometimes severe application." *Sharpe v. Cureton*, 319 F.3d 259, 274 (6th Cir. 2003). And while the application may be

severe, Sevy knew the risk when he rejected the offer. Indeed, a billing entry from the date of the offer indicates that Marko spent nearly four hours "[r]eview[ing] Defendants' Offer of Judgement [sic]; discuss[ing] offer and ramifications with Client; . . . [and] discuss[ing] *Hescott* opinion[.]" (ECF No. 117, PageID.3407 (italics added).) That a slightly victorious plaintiff might have to pay the defendant's costs is by design, as Rule 68 is intended to make plaintiffs "'think very hard' about whether continued litigation is worthwhile." *See Marek v. Chesny*, 473 U.S. 1, 11 (1985). As the Supreme Court has explained, when Rule 68 applies, "the plaintiff—although technically the prevailing party—has not received any monetary benefits from the post[-]offer services of his attorney." *Id.* And because of Rule 68, "[Sevy's] decision to press ahead to trial at the associated expense of [his] attorneys' time . . . lost [him] money." *See Hescott v. City of Saginaw*, No. 10-CV-13713, 2015 WL 13589671, at *8 (E.D. Mich. June 19, 2015) (on remand).

Accordingly, Barach is directed to compensate Sevy $9,641.50 in pre-offer fees and such *pre-offer* costs as the taxation clerk may award. Sevy is directed to compensate Barach for such *post-offer* costs as the taxation clerk may award.

### III. Conclusion

For the foregoing reasons, the Court DENIES Sevy's motion for a new trial on damages. (ECF No. 111.) It GRANTS IN PART Sevy's motion for attorney's fees and costs; he is entitled to $9,641.50 in pre-offer-of-judgment attorney's fees and such *pre-offer* costs as the taxation clerk may award. (ECF No. 112.) And it GRANTS IN PART Defendants' motion for attorney's fees and costs; Barach is entitled only to

such *post-offer* costs as the taxation clerk may award. (ECF No. 113.) A separate

judgment will follow.

     SO ORDERED.

     Dated: September 14, 2022

                    s/Laurie J. Michelson
                    LAURIE J. MICHELSON
                    UNITED STATES DISTRICT JUDGE